**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
BEN MITCHELL, RICARDO ENGERMAN,         )
DENNIS CASHMAN, RAJI LAHCEN,            )
DONALD WILLOUGHBY, ANTHONY SMITH,       )
STEPHEN TOUMA, JOSEPH MATHIEU,          )
ISAAC WILLIAMS, DONALD CHANDLER,        )
WILMER PRESTON, KEVIN DAVIS,            )
LEE HARDIN, STEVEN McCOY,               )
MICHAEL KALINOWSKI,                     )
and all others similarly situated,      )          **Civil Action No. 08-10629-NG**
                                        )
                    Plaintiffs,         )
                                        )
        v.                              )
                                        )
US AIRWAYS, INC. and                    )
PRIME FLIGHT AVIATION SERVICES, INC.,   )
                                        )
                    Defendants.         )
_____ )

## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT WITH DEFENDANT PRIME FLIGHT AVIATION SERVICES, INC.

On June 23, 2009, the Court granted preliminary approval of the proposed class

action settlement Plaintiffs reached with one of the defendants in this case, Prime Flight

Aviation Services, Inc. ("PrimeFlight").  Following that approval, Plaintiffs' counsel sent

notices to the class and have received claim forms back from 435 class members (out

of 593), accounting for 85% of the class settlement proceeds.[1]  This is an extraordinary

response rate for a case spanning a national class, particularly of low wage employees.

No class members opted out of the settlement.  Plaintiffs' counsel's staff have been in

contact with numerous of these class members, and they have overwhelmingly

expressed their appreciation for the settlement and their excitement at receiving their

---

[1]     A spreadsheet showing the amounts to be distributed to each class member (with names
redacted) is attached as Exhibit 1, and the notice that was sent to class members informing them of the
settlement is attached as Exhibit 2.

1

settlement checks.

Plaintiffs now request that the Court grant final approval to the settlement. In this motion, for the Court's convenience, Plaintiffs reiterate their explanation from the preliminary approval motion as to why this settlement is fair, adequate, and reasonable. In addition, the plaintiffs respond to an objection that was filed by attorneys purporting to represent a handful of class members (all but one of whom submitted claims to participate in the settlement).[2] For the reasons described below, the Court should approve this settlement, overrule the objection, and allow the settlement payments to be disbursed to class members.

## I.   BACKGROUND

This case was brought on behalf of skycap employees who provided curbside check-in services to US Airways and skycaps who were employed by PrimeFlight, a contractor company, to provide curbside check-in services for US Airways and other airline carriers. In this case, the skycaps challenged US Airways' imposition of a $2 per bag charge that they contend appeared to passengers to be their tip, and thus resulted in a redirection of their tips to the airline. They also challenged a policy that they allege resulted in their having to pay out of their tips to make up for "shortages" from the bag charge (i.e. they contend that when customers failed to pay the bag charge, or skycaps failed to collect the charge for whatever reason, skycaps had to make up the missing charges out of their tips). Plaintiffs contended that, because of this "shortage" policy, their employer could not take the tip credit against the minimum wage and thus should

---

2       As described further below, the attorneys who filed the objection have no taken no steps to preserve the rights of their purported clients, raise an abstract objection that does not advance the interests of any of their clients, and appear merely to be attempting to interfere in this settlement for reasons Plaintiffs' counsel are at a loss to understand. The interests of these objectors do not outweigh the interests of the rest of the class, more than 400 of whom have expressed a desire to receive their shares of the settlement.

have paid them the full minimum wage (rather than a lower "service" minimum wage that is allowed for tipped employees if certain conditions are met).  Finally, Plaintiffs have also challenged US Airways' decision to eliminate skycap curbside check-in services nationwide following the filing of this lawsuit.

 After extensive discussions and exchange of information, the plaintiffs reached a proposed settlement with PrimeFlight in the amount of $750,000, which is approximately equal to half of the full federal minimum wage damages for a nationwide class of PrimeFlight skycaps that Plaintiffs sought for their "shortage" theory of liability.  In exchange for providing compensation for the PrimeFlight skycaps' minimum wage claims, the settlement provides that these skycaps would not continue to pursue claims against US Airways or other airlines that require the airline to be determined to be an employer or joint employer of the PrimeFlight skycaps.  While the PrimeFlight skycaps would not continue to pursue minimum wage claims or retaliatory discharge claims against US Airways or other airlines (to the extent those claims require the existence of an employment relationship), they can, however, continue to pursue claims that do not require the airlines to be their employer or joint employer.[3]

Thus, the PrimeFlight skycaps will continue in this case to pursue claims against US Airways for recovery of damages for the imposition of the $2 bag charges themselves, including their claims for tortious interference and unjust enrichment/ *quantum meruit*.  In addition, the Massachusetts skycaps can continue to pursue claims against US Airways for violation of the Massachusetts Tips Law, Mass. Gen. L. c. 149

---

3       This was a material condition of the settlement for PrimeFlight, since US Airways had aggressively pursued an indemnification claim against PrimeFlight, on account of Plaintiffs' claims here that US Airways was their joint employer.

§ 152A.[4]  These remaining claims will allow the PrimeFlight skycaps to continue to pursue recovery of the bag charges themselves, which they contend customers believed were their tips.  (These were the claims on which the American skycaps prevailed in the *DiFiore et al. v. American Airlines* case – tortious interference and Massachusetts Tips Law claims.)  The PrimeFlight skycaps can also continue to pursue their claims related to US Airways' elimination of skycap services for curbside check-in following the filing of this lawsuit, so long as those claims do not require the existence of an employment relationship with US Airways.[5]

## II.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

It is well-established that courts favor settlements of lawsuits over continued litigation.  *See, e.g.*, *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910); *Durett v. Housing Auth. of  Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *In re Viatron Computer Sys. Corp.*, 614 F.2d 11, 15 (1st Cir. 1980).  Before granting approval of a proposed class action settlement, the Court must find that the settlement is fair, reasonable, and adequate.  *See* Mass. R. Civ. P. 23(c); *Durett v. Housing Authority of the City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990); *Sniffin v. Prudential Ins. Comp.*, 395 Mass. 415 (1985).

A "strong initial presumption" of fairness arises where the parties can show that "the settlement was reached after arms-length negotiations, that the proponents' attorneys have experience in similar cases, that there has been sufficient discovery to

---

[4]    In *DiFiore et al. v. American Airlines*, 454 Mass. 486 (2009), the Massachusetts Supreme Judicial Court recently decided that non-employers can be liable under the Massachusetts Tips Law, affirming the judgment entered on behalf of the American skycaps who, like the PrimeFlight skycaps in this case, were employed through a contractor company.  The Court ruled that airlines could not shield themselves from liability under the law by contracting out their skycap services.

[5]    Though the PrimeFlight skycaps would drop their FLSA retaliation claim to the extent it requires the existence of an employment relationship, they can continue to pursue a tortious interference claim that US Airways unlawfully interfered with their relationship with PrimeFlight when it discontinued skycap services for curbside check-in.

enable counsel to act intelligently, and that the number of objectors or their relative interest is small." *Rolland v. Cellucci*, 191 F.R.D. 3, 6 (D. Mass. 2000); *see also City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996) ("[W]hen sufficient discovery has been provided and the parties have bargained at arms length, there is a presumption in favor of the settlement").

"[T]here is no single test in the First Circuit for determining the fairness, reasonableness and adequacy of a proposed class action settlement." *In re Relafen Antitrust Litigation*, 231 F.R.D. 52, 71-72 (D.Mass. 2005), *quoting In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 206 (D.Me. 2003) (internal quotations omitted).  As a result, the courts of the First Circuit rely variously on a number of factors, the most common of which include: (1) the complexity, expense and duration of litigation, if the agreement is denied; (2) the amount of the proposed settlement compared to the amount at issue; (3) reaction of the class to the settlement; (4) the stage of proceedings and the amount of discovery completed; (5) the plaintiffs' likelihood of success on the merits and recovering damages on their claims; (6) whether the agreement provides benefits which the plaintiffs could not achieve through protracted litigation; (7) good faith dealings and the absence of collusion; and (8) the settlement's terms and conditions.  *See*, *e.g.*, *Rolland v. Patrick*, 562 F.Supp.2d 176; *In re Relafen Antitrust Litigation*, 231 F.R.D. at 72; *In re Lupron Marketing & Sales Practices Litig.*, 228 F.R.D. 75, 93 (D.Mass. 2005); *Rolland v. Celluci*, 191 F.R.D. at 8-9; *M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822-23 (D.Mass. 1987).

In the case at bar, an examination of each of these factors demonstrates that the proposed settlement is fair, reasonable, and adequate to the members of the class, and should be approved by the Court.

First, with respect to the complexity, expense and duration of litigation, it is clear that the prosecution of this case will be lengthy and expensive.  (Indeed, the skycaps who prevailed against American Airlines in *DiFiore et al. v. American Airlines, Inc.*, D. Mass. Civil Action No. 07-10070-WGY, on a nearly identical claim challenging American's $2 per bag charge still have not recovered, despite having filed the case in December 2006 and having prevailed at trial in April 2008, approximately a year and a half ago.)  By resolving claims against one defendant (PrimeFlight), the PrimeFlight skycaps will be able to receive some recovery now and simplify and focus their claims against the remaining defendant, US Airways.

Second, with respect to the amount of the proposed settlement compared to the amount at issue, as noted above the proposed settlement is based upon an aggregate amount of approximately one half of the federal minimum wage claims for all PrimeFlight skycaps.  Given the challenges that the skycaps would have faced in prevailing on this claim (including proving a common policy of requiring skycaps to make up "shortages" from the bag charges out of their tips and proving eligibility for damages for every pay period), this is a favorable settlement.

Third, with respect to the reaction of the class to the settlement, as described above, the class reacted overwhelmingly favorably to the settlement.  Class members were informed on their claim forms what the minimum amount would be for their individual settlement shares, and more than 400 class members submitted claim forms to receive their payments.  In countless discussions Plaintiffs' counsel's staff have had

with class members, the skycaps have been extremely appreciative and excited about the settlement.

Fourth, with respect to the stage of proceedings and the amount of discovery completed, the Plaintiffs obtained voluminous data discovery from PrimeFlight allowing them to estimate the aggregate class damages for the minimum wage claim, and thus allowing them to assess the fairness of this settlement.  The parties are now almost finished with discovery of their claims against US Airways, and there has already been substantial briefing of legal issues.  It is clear that a settlement with one defendant will allow the plaintiffs to simplify the case and focus their energies on their claims against the other defendant, US Airways.

Fifth, with respect to the plaintiffs' likelihood of success on the merits and recovering damages on their claims, Plaintiffs believe they have raised strong claims against PrimeFlight but recognize hurdles they would have faced had these claims continued in litigation.  Most significantly, they would have been met with the challenge of proving a common policy of skycaps being required to make up "shortages" for unpaid bag charges out of their tips.  Also, by narrowing their claims against US Airways, they will not need to prove a joint employment relationship between US Airways and PrimeFlight.  Through this settlement, they will have received some recovery for their minimum wage claim and can now focus primarily on their claims for recovery of the $2 per bag charges and on their claim against US Airways for ending skycap services following the filing of this lawsuit.

Sixth, with respect to whether the agreement provides benefits which the plaintiffs could not achieve through protracted litigation, the settlement provides the

benefit of a prompt partial resolution and the avoidance of delay in the PrimeFlight

skycaps receiving compensation for their minimum wage claims.

Seventh, with respect to whether the settlement was reached as the result of

good faith dealings and the absence of collusion, it is clear that this is the case.

Plaintiffs are represented by highly experienced and competent counsel who have

litigated wage and hour cases aggressively and successfully.  As described below in

further detail, Plaintiffs' lead counsel is a recognized national expert in class action

litigation.  Attorney Liss-Riordan has taken three class action cases to trial and won

them all; along with her co-counsel Attorney Schwab, she has also prevailed at trial in a

very similar case brought against American Airlines, obtained numerous court rulings in

favor of plaintiff classes (including a number of summary judgments entered for

plaintiffs), and over the last seven years obtained more than twenty court-approved

settlements of class action wage and hour cases.[6]  In this case, PrimeFlight agreed to a

---

[6]     These cases include: *Scatto v. Fine Hotels Corp.*, C.A. No. 07-1823 (Bristol Superior Ct. 2009);
*Karag v. State Room, Inc.*, C.A. No. 07-4190 (Suffolk Superior Ct. 2009); *Mouiny v. Commonwealth Flats
Dev. Corp. d/b/a Seaport Hotel and World Trade Center*, C.A. No. 06-1115 (Suffolk Superior Ct. 2009);
*Shea et al. v. Weston Golf Club*, C.A. No.02-1826 (Middlesex Superior Ct. 2009); *Miller et al. v. The
Savings Bank Life Insurance Company of Massachusetts*, C.A. No. 08-10267 (D.Mass. 2008);  *Rose et
al. v. Ruth's Chris Steak House Boston*, C.A. No. 07-5081 (Suffolk Superior Ct. 2008); *Verrecchia et al. v.
DT Management, Inc. d/b/a Hotel @ MIT*, C.A. No. 08-0127 (Middlesex Superior Ct. 2008); *Perry et al. v.
Woodman's, Inc.*, C.A. No. 08-1218 (Essex Superior Ct. 2008); *Roth v. Vesper Country Club*, C.A. No.
07-1231 (Middlesex Sup. Ct. 2008); *Cooney et al. v. Compass Group Foodservice and Northeastern
University*, C.A. No. 02-3159 (Middlesex Superior Ct. 2008); *Paratore et al. v. F-1 Boston Café, LLC*, C.A.
No. 02-2162 (Norfolk Superior Ct. 2008); *Byrne et al. v. Elephant and Castle Group, LLC*, C.A. No. 06-
4732 (Suffolk Superior Ct. 2008); *Tucker et al. v. Halifax Investments, Inc.*, C.A. No. 07-154 (Plymouth
Superior Ct. 2008); *Ng et al. v. Jin Restaurant Group LLC*, C.A. No. 07-333 (Essex Superior Ct. 2008);
*Fernandez et al. v. Four Seasons Hotel*, C.A. No. 02-4689 (Suffolk Superior Ct. 2008) (banquets) (Muse,
J.); *Banks et al. v. SBH Corp. (Grill 23)*, C.A. No. 04-3515 (Suffolk Superior Ct. 2007) (Connolly, J.); *Frye
et al. v. Columbia Sussex Corp.*, C.A. No. 06-4622 (Middlesex Superior Ct. 2007) (Billings, J.); *Calcagno
et al. v. High Country Investor, Inc. (Hilltop)*, C.A. No. 03-0707 (Essex Superior Ct. 2006) (Murtagh, J.);
*Ellison, et al. v. NPS, LLC*, C.A. No. 05-01105 (Middlesex Sup. Ct. 2006) (Hamlin, J.); *Meimaridis, et al. v.
Brae Burn Country Club*, C.A. No. 04-3769 (Middlesex Superior Ct. 2006) (Fremont-Smith, J.); *Hough et
al. v. Select Restaurants, Inc. d/b/a Top of the Hub*, C.A. No. 05-1258 (Suffolk Sup. Ct. 2006) (Brassard,
J.); *Bullock et al. v. Ritz-Carlton Hotel Co.*, C.A. No. 04-04379 (Suffolk Sup. Ct. 2005); *Michalak et al. v.
Boston Palm Corporation*, C.A. No. 03-1334 (Suffolk Sup. Ct. 2004) (White, J.); *Williamson et al. v. DT
Management Co. d/b/a Boston Harbor Hotel, Inc.*, C.A. No. 02-01827 (Middlesex Sup. Ct. 2004) (Neel,
J.); *Fernandez et al. v. Four Seasons Hotel, LTD*, C.A. No. 02-4689 (Suffolk Sup. Ct. 2004) (room
service) (Walker, J.); *Keyo et al. v. Seaport Hotel and World Trade Center Boston, et al.*, C.A. No. 02-
3339 (Suffolk Sup. Ct. 2004) (Murphy, J.); *Licari et al. v. Meridien Hotels, Inc.*, C.A. No. 02-3340 (Suffolk

settlement relatively early in the litigation process for approximately 50% of the potential damages for the central claim brought against it in the case.  Plaintiffs' counsel was provided with voluminous documents confirming the amount of potential damages. Plaintiffs' counsel's success in numerous other cases raising similar issues as this case led to an early settlement.  This settlement was clearly reached as a result of arm's-length negotiations.[7]  This case was mediated by a prominent and respected private neutral, Mark Irvings, who has much experience mediating class action wage and hour disputes.

Finally, with respect to the settlement's terms and conditions, as described throughout this memorandum, the settlement terms are fair, reasonable, and adequate.

### III.   THE OBJECTION FILED BY ATTORNEYS PURPORTING TO REPRESENT A HANDFUL OF SKYCAPS SHOULD BE OVERRULED.

Attorneys purporting to represent several class members have filed an objection to the settlement.  As set forth in more detail in their opposition to a motion to intervene that was filed by these attorneys following the preliminary approval (Docket No. 82), this objection should be overruled and the motion to intervene should be denied.  Most importantly, in attempting to intervene and object to the settlement, the attorneys are not advancing the interests of class members, nor even the interests of their own clients. Moreover, the objection does not have any merit in any event—the settlement of the claims against PrimeFlight is fair, and the notice to class members fully informed them

---

Sup. Ct. 2003) (McEvoy, J.); and *Latta et al. v. The Nashawtuc Country Club, Inc.*, C.A. No. 01-4185 (Middlesex Sup. Ct. 2003) (Giles, J.).

[7]      When sufficient discovery has been provided and the parties have bargained at arm's-length, there is a presumption in favor of the settlement.  *See City Partnership Co. v. Atlantic Acquisition*, 100 F.3d 1041, 1043 (1st Cir. 1996); *United States v. Cannons Engineering Corp.*, 720 F. Supp. 1027, 1036 (D. Mass. 1989); *Berenson*, 671 F. Supp. at 822 (where a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair).

of the effect of the settlement on their claims.  Indeed, the extremely high claims rate in this case demonstrates that class members are overwhelmingly supportive of the settlement and eager to claim their shares.

In seeking to intervene in the settlement and objecting to it, the attorneys purporting to represent the objectors' interests appear to be doing no more than attempting to interfere with this settlement, and it is unclear whose interests they are advancing and why.  Indeed, Plaintiffs' counsel have serious concerns as to whether the purported intervenors and objectors even understand what their counsel is doing and how it will impact them and other members of the class.  The attorneys originally filed a motion to intervene naming seven individuals as intervenors.  As set forth in PrimeFlight's opposition to the motion to intervene (Docket No. 81), three of the seven (Thomas Gearhart, James McFarland, and Sergerrie Taylor) are not even class members, as they never worked for PrimeFlight during the period of time when the $2 charge was being collected.  Indeed, PrimeFlight has no record of Mr. Taylor ever working for the company.  Of the remaining four purported intervenors, three of them have submitted claim forms in the case.  Mr. Robinson and Mr. Glass submitted their claim forms in mid-July, shortly after the motion to intervene was filed, and Mr. Eaddy submitted his claim form in August, at approximately the same time that the objection was filed.  In their objection to the settlement, the attorneys have removed the three individuals who sought to intervene despite not even being class members and have added one additional objector, Anthony Walter.  Mr. Walter submitted a claim form at the same time, in late August.  *See* Exhibit 3 (claim forms of purported intervenors/objectors).

All four of the so-called intervenors/objectors who submitted claim forms signed

the form and agreed "to be bound by the collective and class action settlement" in the

case, including the release of claims.  *See* Exhibit 3.  None of them noted on their claim

forms that they were subject to any objection.  Instead, Plaintiffs' counsel received a

separate letter signed by the attorney in late August, asserting that "any claim forms

submitted by Timothy Robinson, Corey Eaddy, Anthony Walter or Marshall Glass are

submitted to the Court's ruling on their Objections, and the Motion to Intervene and to

Set Aside the Court's Order Granting Preliminary Approval of the Class Action

Settlement."  Exhibit 4 (Allen ltr., 8/24/09).  Moreover, Clarence Glaster, the one

purported intervenor/objector who did not submit a claim form also did not opt out of the

case.  Accordingly, despite the fact that his attorneys unquestionably knew what steps

were necessary to preserve his rights, they have allowed him to lose the right to opt out

of the litigation and to claim his share of the settlement.  *National Ass'n of Chain Drug*

*Stores v. New England Carpenters Health Benefits Fund*, __ F.3d __, 2009 WL

2824867, at *4 (1st Cir. 2009) ("Class members, unless they opt out, are legally bound

by a settlement.")

    If the objectors were dissatisfied with the settlement, they could have opted out of

it and pursued their own separate claims.  They did not opt out; instead, all but one of

them submitted claim forms and the one who did not submit a claim form has waived his

right to pursue claims separately by failing to opt out.  *See* Exhibit 3.

    Likewise, these attorneys have failed to preserve their clients' interests in a

"copycat" case they filed in February 2009 in Philadelphia, which repeats almost

verbatim the claims filed in this case.  *See Thompson et al. v. US Airways, Inc. et al.*,

E.D. Pa. Civil Action No. 2:09-cv-00870-GP.  The named plaintiffs in that case, like the

purported objectors in this case, have not opted out of this settlement and thus are

barred from pursuing claims in the *Thompson* case that are released by this settlement

(assuming this settlement is approved)—while at the same time those skycaps will not

be receiving payments from this settlement because they did not submit claim forms.

Once again, there can be no question that the attorneys knew what they had to do to

preserve the Thompson litigation (and/or to protect their clients' rights), and they chose

to take no action.[8]

In addition, as noted in Plaintiffs' opposition to the motion to intervene, although

these attorneys purport to be representing the interests of the objectors and other

unnamed class members around the country (and have advertised and claimed publicly

that they are representing skycaps around the country, *see* Pls.' Opp. to Mot. to

Intervene, Docket No. 82, at 5-6), they have done nothing to file a separate claim on

behalf of any skycaps, other than the Philadelphia action (which is now poised to be

extinguished due to those attorneys' failure to advise their clients to opt out of this

settlement).

Moreover, not only have these attorneys failed to preserve the rights of, or

advance the interests of, their purported clients in this case and the Philadelphia action,

but the objection they have raised here is also contrary to the best interests of this

class.  The class has overwhelmingly expressed its approval of the settlement by its

response to the notice, and class members are clearly looking forward to receiving their

payments shortly.  Indeed, the objections to this settlement constitute less than 1% of

the class and even less than 1% of the total number of class members who have

submitted claim forms.  This low objection rate, coupled with the exceedingly high

---

[8]     Though the *Thompson* action purports to be on behalf of a class of Pennsylvania skycaps, 50 out of the 73 Philadelphia skycaps who would be part of that putative class have submitted claim forms in this case, and none of the remaining 23 has sought to opt out (including Anthony Walter, the one objector who failed to opt out, as explained above).

response rate, is itself a basis to deny the objection.  Indeed, courts have repeatedly

approved class action settlements with much higher objection rates.  *See, e.g.,*

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (approving

settlement where "only" 10% of class objected, 29 out of a total of 281 class members);

*Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987) (citing cases where

courts approved settlements despite objections by 15%, 20%, 40%, 50%, 56% of class).

Sustaining these attorneys' objection would only thwart or delay the disbursement of the

settlement proceeds to the class.

Moreover, on its merits, the objection filed by these attorneys is simply baseless.

Notably, they have not even challenged the dollar amount of the settlement; they have

instead presented a muddled mix of theoretical legal arguments against several terms

of the settlement.  These arguments are not only contrary to the interests of the class,

but are also incorrect on the facts and the law (as described in more detail in Plaintiffs'

opposition to the motion to intervene).

Primarily, the intervenors' attorneys object that the settlement binds class

members on an "opt-out" basis, since the settlement incorporates releases of state law

claims in addition to federal FLSA claims.  As explained in Plaintiffs' response to the

motion to intervene, such a procedure is proper and has been approved by other federal

courts.  *See* Pls.' Opp. to Mot. To Intervene (Docket No. 82), at 15-16.  The settlement

does not purport to bind any class members who have not affirmatively filed claim forms

to a release of their FLSA claims. (Plaintiffs' counsel are well aware that FLSA claims

can only be brought and settled on an "opt-in" basis.)  However, it is perfectly

permissible for the settlement to bind class members on an "opt-out" basis for state law

claims.  In addition, although state law claims were not included in the complaint other

than for the Massachusetts skycaps, it is permissible for a settlement to encompass other claims as well.[9]  Other federal courts have approved class action settlements of multi-state wage claims in similar circumstances.  In fact, in a case brought by skycaps against another contractor company, Prospect Airport Services, Inc. challenging the $2 charge, a court in the Northern District of Illinois has preliminarily approved a class action settlement including FLSA claims and claims under the wage laws of numerous states, despite the fact that the complaint originally included only federal and Illinois wage claims.  *See Barreda et al. v. Prospect Airport Services, Inc.*, N.D. Ill. Civil Action No. 08 C 3239 (class settlement preliminarily approved on July 1, 2009).  Similarly, in *Bahramipour et al. v. Citigroup Global Markets, Inc.*, a federal court in the Northern District of California approved a class action settlement including wage claims under the laws of all of the states, even though the case was filed alleging only federal and California wage claims.  N.D. Cal. Civil Action No. 04-4440, Docket No. 120, dated 3/18/08.  Moreover, while the objectors contend that a multi-state class action based on the laws of different states is not permitted, they are simply wrong on this point.  *See, e.g., In re Relafen Antitrust Litig.*, 221 F.R.D. at 280 n.17 (irrelevant differences in state laws do not preclude class treatment); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 84 (D. Mass. 2005) (recognizing that some "state law differences are irrelevant and may be ignored").

What is important is that class members be clearly notified of what the consequences are of accepting a settlement, and Plaintiffs' counsel took pains to make this explicit and clear in the notice.  The notice states that:

---

[9]      And although the objectors contend that the settlement does not take into account variations in state law, this is incorrect -- the relative settlement shares to be distributed to class members accounted for the variations in potential state law damages.  This is because the damages were calculated for each class member based upon the difference between the base wage rate they were paid and the minimum wage in their state.

> This settlement only resolves the claims against PrimeFlight.  If you
> participate in the settlement and claim your share of the settlement
> proceeds, you will be releasing all claims you may have against
> PrimeFlight related to tips, $2 or $3 bag fees, minimum wage, or US
> Airways' discontinuation of Skycaps for curbside check-in.  You will also
> be releasing claims that the air carrier for whom you provided service
> through PrimeFlight was your employer or joint employer.  Even if you do
> not claim your share of the settlement proceeds, if you do not opt out of
> the case, then you will be releasing all of your state law claims against
> PrimeFlight and state law claims against the air carrier for whom you
> provided service that require the existence of an employment relationship.

Notice, attached as Exhibit 2, at 2.  In addition, the claim form attached to the settlement

notice actually informed each class member of the minimum amount of the settlement

payment that they would receive, and with this knowledge, class members responded

enthusiastically to the settlement.

The settlement notice and claim form also fully explained that the settlement

would release the class members' claims against the airlines (including US Airways)

that rely on the existence of a joint employment relationship.  Indeed, the release signed

by each class member states: "I am also releasing any claims against US Airways and

other air carriers that would require a finding that they were my joint employer with

PrimeFlight, including claims for wages, overtime pay, or retaliation arising under the

FLSA, Massachusetts state law, and any other state law that would require the

existence of a joint employment relationship."  *See* Exhibit 3; *see also* Exhibit 2 at 2.

Contrary to the objectors' argument, this release (which was signed by all 435 class

members who submitted claim forms including three of the objectors) is entirely

appropriate.

Moreover, the objectors' assertion that this release was "without consideration"

ignores reality.  In light of the fact that PrimeFlight was itself exposed to liability for all

employment-based claims under its indemnification agreements with the airlines, the

release of these claims was a key term of the settlement and likely motivated PrimeFlight to agree to such a substantial sum.[10]  The "consideration" that class members receive for this release is prompt resolution of their minimum wage claims and money in hand now (as opposed to what may be years of waiting for final resolution of the case as a whole, and the risk of not prevailing).  Indeed, by settling this case on a broad scale, Plaintiffs' counsel was able to get maximum relief for the maximum number of people, instead of leaving all non-Massachusetts skycaps without any remedy at all (as the objectors' counsel would apparently prefer).  PrimeFlight simply would not have been able to pay full damages for all possible claims for all skycaps nationwide, which is precisely why a nationwide settlement is in the best interests of the class—otherwise only skycaps in states who were lucky enough to have lawyers file claims for them would get compensation while everyone else would lose out.

Moreover, to the extent that the objecting attorneys are concerned about class members who would be bound to the settlement on an "opt-out" basis without having received notice of the settlement, Plaintiffs' counsel has remedied any concern that might exist on this basis.  Plaintiffs' counsel has persuaded PrimeFlight to agree that class members who did not opt out and can show they did not receive notice of the settlement will not be bound by the release, but can instead pursue their own individual claims if they choose.  Thus, any concerns about binding class members who may not have received the notice of the settlement, and thus did not respond to the settlement and would be bound by the release, has been eliminated.

In light of the fact that so many class members are participating in this settlement and not one class member has opted out, the objection filed by these attorneys just

---

[10]     Indeed, there would be no reason for PrimeFlight to pay out $750,000 in this case only to be subject to more claims based on the exact same facts.

does not make logical sense.  Why would class members be in a better position if this settlement were not approved (and the 435 class members who submitted claim forms did not get their settlement shares) simply because the settlement includes state law claims?  If class members wanted to pursue those claims separately, they could just opt out and do so.  No one did, which just confirms that the objectors' argument does not serve the class's interests here.  (In fact, the objectors' arguments are strikingly similar to the types of arguments raised by defendants in an effort to defeat class certification and thereby limit their liability.)

Given the class' response to the settlement, the Court should overrule the objection and deny the motion to intervene.  The objection is not in the best interests of the class, who overwhelmingly want the settlement to be approved so that they can receive their settlement payments.

## IV.     THE PROPOSED PLAN OF DISTRIBUTION OF THE SETTLEMENT FUNDS

As described in the preliminary approval motion, the notice of settlement and claim form were sent to the last known addresses of all skycaps who worked for PrimeFlight at any time since December 2005 performing curbside check-in services for an airline that charged a $2 or $3 bag fee.  PrimeFlight provided records showing the difference between the "service" rate they received for this work and the full federal minimum wage (or state minimum wage for states which have a higher minimum wage). The total class proceeds of the settlement (i.e. the net settlement fund, after the subtraction of attorneys' fees, costs, and enhancement payments for lead plaintiffs) was allocated among skycaps in proportion to this amount, and skycaps were informed on their claim forms what the minimum amount would be that they would receive from the

settlement.[11]   A spreadsheet showing the minimum settlement distribution to claimants

is attached here as Exhibit 1.[12]

In addition, the settlement includes an incentive payment of $2,000 each for the

lead plaintiffs who put their names on the case caption and have participated in the

litigation to assist counsel in pursuing the case on behalf of a class, and enhancement

payments of $500 each for each plaintiff who has submitted an opt-in form by the date

of the agreement.   Incentive payments have been routinely approved by the courts in

class action settlements as a way of compensating class representatives who have lent

their names and efforts to the prosecution of litigation on behalf of others.   Courts have

also recognized that such payments can serve an important function in promoting class

action settlements.   *See Sheppard v. Consolidated Edison Company of New York, Inc.*,

2002 WL 2003206, *5-6 (E.D. N.Y. 2002) (collecting cases approving incentive

payments).[13]

## V.   THE REQUESTED ATTORNEYS' FEE IS FAIR AND REASONABLE AND SUPPORTED BY THE APPLICABLE PRECEDENT

The settlement agreement provides for a one-third share for attorneys' fees and

expenses.   The notice of settlement expressly informed class members that one-third of

the settlement proceeds would be used to pay for attorneys' fees, and no plaintiffs or

---

[11]   The parties agreed that if there were unclaimed proceeds of the settlement, beyond class members receiving 100% of their individual damages, that the unclaimed proceeds would be distributed to *cy pres.*   However, given the response rate to the settlement, there will no unclaimed proceeds. PrimeFlight also had the option to void the agreement if class members whose combined claims exceeded 20% of the net proceeds of the settlement did not submit claim forms, but this did not occur.

[12]   In order to maintain class members' confidentiality, names are not included on this spreadsheet.

[13]   *See also Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each of four representative plaintiffs); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (citing cases in support of incentive payments and awarding payments ranging from $35,000 to $50,000 for named plaintiffs); *Yap v. Sumintomo Corp. of Am.*, 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative plaintiffs due, in part, to risk of retaliation).

class members have objected to this portion of the settlement.[14]  Plaintiffs' counsel

accepted this case on a fully contingent arrangement, with no payment at all made up

front.

As noted above, Plaintiffs' counsel has been a pioneer in the development of the

law protecting tipped employees.  Attorney Liss-Riordan and her co-counsel Attorney

Schwab have taken three tips cases to trial and have won all three before juries:

*Calcagno et al. v. High Country Investor, Inc., d/b/a Hilltop Steak House*, C.A. No. 03-

0707, Mass. Sup. Ct. (Essex 2006) (banquet coordinators not entitled to share in

gratuities); *Benoit et al. v. The Federalist, Inc.*, C.A. No. 04-3516, Mass. Sup. Ct.

(Suffolk 2007) (coordinators not entitled to portion of banquet service charges); and

*DiFiore et al. v. American Airlines, Inc.*, C.A. No. 07-10070, U.S. Dist. Ct. (D. Mass.

2008) (airline's policy of collecting $2 per bag charge for curbside check-in that was not

distributed to skycaps violated Mass. Tips Law and rendered airline liable for tortious

interference with advantageous relations).  She and Attorney Schwab have also

handled two tips cases on appeal, both of which they also won:  *DiFiore et al. v.*

*American Airlines, Inc.*, 454 Mass. 486 (2009) (Massachusetts Supreme Judicial Court

decided on certified question that non-employers are covered by Mass. Tips Law,

affirming jury verdict for plaintiff skycaps); *Cooney et al. v. Compass Group*

*Foodservice,* 69 Mass. App. Ct. 632 (2007) (reversing trial court's denial of summary

judgment for plaintiff servers, holding that Massachusetts Tips Law should be strictly

construed against establishment that did not distribute proceeds of charges labeled

"service charges" to waitstaff employees).  Attorney Liss-Riordan, with her co-counsel,

---

[14]     The lead plaintiffs signed a retainer agreement providing that counsel would receive one-third of the proceeds of any judgment or settlement.

has prevailed on summary judgment on behalf of plaintiff waitstaff in at least seven tips

cases.  She has been appointed class counsel for a national class of waitstaff

employees in a case against a national steakhouse chain, *Johnson et al., and Morton's*

*Restaurant Group, Inc.,* AAA Case No. 11 160 01513 05 (confirmed by the federal

district court, Judge Mark Wolf, C. A. No. 07-11808 (D. Mass. 2008)).  Along with her

New York co-counsel, Attorney Liss-Riordan has been appointed lead interim class

counsel on behalf of Starbucks baristas across New York State by the federal district

court (Judge Laura Swain) in the case of *In re Starbucks Employee Gratuities Litigation*,

C.A. No. 08-3318-LTS (S.D.N.Y. 2008).

For profiles of Attorney Liss-Riordan's work on behalf of tipped employees, *see*

Exhibit 5 (*Boston Globe*, front page, Apr. 29, 2008, "Skycaps and waiters find a legal

champion"), and Exhibit 6 (*Lawyers and Settlements*, Apr. 9, 2008, "Attorney Shannon

Liss-Riordan: Challenging Corporate Power and Tips Abuse").

The proposed attorneys' fee is the same standard one-third share that has been

approved by all the judges who have ruled on the fairness of the other settlements

achieved by Plaintiffs' counsel in tips law cases, listed above in note 5.  This Court, as

well, should also approve this fee as fair and reasonable.

Courts generally favor awarding fees from a common fund based upon the

percentage of the fund method.  As the Supreme Court has explained:

> [T]his Court has recognized consistently that a litigant or a lawyer
> who recovers a common fund for the benefit of persons other than
> himself or his client is entitled to a reasonable attorneys' fee from
> the fund as a whole. . . .  Jurisdiction over the fund involved in the
> litigation allows a Court to prevent . . . inequity by assessing
> attorney's fees against the entire fund, thus spreading fees
> proportionately among those benefited by the suit.

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citations omitted.)  *See also Blum v. Stenson*, 465 U.S 886, 900 n.16 (1984); *In re Thirteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Lit.*, 56 F.3d 295 (1st Cir. 1995) (awarding attorneys' fees of $68 million out of a $220 million settlement fund); *see also Swedish Hospital Corp. v. Shalala,* 1 F.3d 1261, 1271 (D.C.Cir.1993) ("a percentage of the fund method is the appropriate mechanism for determining the attorney fees award in common fund cases"); *Camden I Condominium Association v. Dunkle,* 946 F.2d 768, 774 (11th Cir.1991) ("we believe that the percentage of the fund approach is the better reasoned in a common fund case").[15]

A one-third attorney's fee in a common fund case has been consistently approved as reasonable.  Examples of cases in which a one-third fee was approved include:  *In Re: Lithotripsy Antitrust Litigation,* No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143 at *6-7 (N.D.Ill. June 12, 2000) (noting that 33.3% of the fund plus expenses is well within the generally accepted range of the attorneys fee awards in class-action lawsuits); *In re: Medical X-Ray Film Antitrust Litigation*, CV-93-5904, 1998 U.S. Dist. LEXIS 14888 at *21 (E.D.N.Y. Aug. 7, 1998) (awarding a fee of $13 million, which represented one-third of the settlement); *In re Crazy Eddie Securities Litig.*, 824 F. Supp. 320, 325-26 (E.D.N.Y. 1993) (awarding 34% of a $42 million fund); *City National Bank v. American Com. Financial Corp.*, 657 F. Supp. 817 (W.D.N.C. 1987); *In re*

---

[15]      Among the advantages recognized by the First Circuit in *Thirteen Appeals*, was the fact that the percentage method is less burdensome to administer than the lodestar method.  *See id.* at 307.  The court also endorsed the percentage of recovery approach because it is result-oriented, and hence it promotes the more efficient use of attorney time, and because the percentage method also better reflects the market value of counsel's services.  In *Thirteen Appeals*, the First Circuit noted that other Courts of Appeals have *required* the use of percentage awards in common fund cases.  *See, e.g., Camden Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1271-72 (D.C. Cir. 1993).  *See also* Report of Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 255 (1985) and Federal Judicial Center, *Awarding Attorneys' Fees and Managing Fee Litigation*, 63-64 (1994).

*Franklin Nat'l Bank*, [1980 Transfer Binder] Fed. Sec. L. Rep. (CCH) &97,571 (E.D.N.Y. 1980) (34% of settlement fund); *Hwang v. Smith Corona Corp.*, B.89-450 (D. Conn. Mar. 12, 1992) (awarding one-third of $24 million fund); *Chalverus v. Pegasystems, Inc.*, C.A. No. 97-12570-WGY (December 19, 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery); *In re: Peritus Software Services, Inc. Sec. Litig.*, C.A. No. 98-10578-WGY (February 28, 2000); *In re: Copley Pharmaceutical, Inc. Sec. Litig.*, C.A. No. 94-11897-WGY (D. Mass. Feb. 8, 1996) (awarding one-third of a $6.3 million settlement fund); *Morton v. Kurzweil Applied Intelligence, Inc.*, C.A. No. 10829-REK (D. Mass. Feb. 4, 1998); *In re Gillette Securities Litigation*, C. A. No. 88-1858-REK (D. Mass. Mar. 30, 1994); *Wilensky v. Digital Equipment Corporation*, C.A. No. 94-10752-JLT (D. Mass. July 11, 2001); *In re Picturetel Corporation Sec. Litig.*, C.A. No. 97-12135-DPW (D. Mass. Nov. 4, 1999) (approving award of one-third of a $12 million settlement fund); *Zeid v. Open Environment Corp.*, C.A. No. 96-12466-EFH (D. Mass. June 24, 1999) (awarding a fee of one-third of a $6 million settlement). Given this precedent approving one-third recovery for attorneys' fees in class action cases, the Court should recognize that a one-third recovery in this case is reasonable.

## VI.   **CONCLUSION**

For the reasons set forth above, the class action settlement in this case is fair and reasonable.  Plaintiffs therefore respectfully request that this Court grant final approval to the settlement (which was attached as Exhibit 1 to Plaintiffs' preliminary approval motion).

Respectfully submitted,

BEN MITCHELL, et al,
By their attorneys,

_/s/  Shannon Liss-Riordan_____
Shannon Liss-Riordan, BBO #640716
Hillary Schwab, BBO #666029
LICHTEN & LISS-RIORDAN, P.C.
100 Cambridge Street, 20th Floor
Boston, MA 02114
(617) 994-5800

Dated:        September 18, 2009

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record by electronic filing on September 18, 2009.

_/s/  Shannon Liss-Riordan_____
Shannon Liss-Riordan, Esq.