UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BEN MITCHELL, DONALD CHANDLER, WILMER PRESTON, RICARDO ENGERMAN, DENNIS CASHMAN, RAJI LAHCEN, DONALD WILLOUGHBY, ANTHONY SMITH, STEPHEN TOUMA, JOSEPH MATHIEU, ISAAC WILLIAMS, KEVIN DAVIS, LEE HARDIN, STEVEN McCOY, MICHAEL KALINOWSKI, GERALD PEET, <br><br> Plaintiffs, <br><br> v. <br><br> US AIRWAYS, INC., PRIME FLIGHT AVIATION SERVICES, INC., <br><br> Defendants. | CIVIL ACTION NO. 08-10629-WGY |
| JOSEPH BROWN, VINCENT McLAREN, PHILIP FIELDS, CARLOS BORGES CARREIRO, PATRICIA SHEA-SCANLON, DHARAM SAIHGAL, ELVIS BUTCHER, LARRY HOLT, SCOTT GORDON, MICHAEL RASHARD, LORENZO WILEY, JAMES BROWN, GERARDO AGUIRRE, KEVIN REAVES, MICHAEL KALINOWSKI, <br><br> Plaintiffs, <br> v. <br><br> UNITED AIR LINES, INC., <br><br> Defendant. | CIVIL ACTION NO. 08-10689-WGY |

MEMORANDUM & ORDER

YOUNG, D.J.                                                    May 1, 2012

1

## I.  INTRODUCTION

Over the course of the last century, airlines have been subject to varying levels of oversight by different regulatory bodies.  The first significant national legislation regarding commercial aviation was the Air Commerce Act of 1926, vesting regulatory authority in the Secretary of Commerce to ensure air safety, and granting the President, the Secretary of War, and the states the authority to reserve airspace for certain uses.  Pub. L. No. 69-254, 44 Stat. 568 (1926) (codified as amended in scattered sections of 49 U.S.C.).

In 1938, recognizing that the division of responsibility and authority over air safety and navigation "plague[d]" both civil and military air operations, H.R. Rep. No. 85-2360, at 2 (1958), reprinted in 1958 U.S.C.C.A.N. 3741, 3743, Congress enacted the Civil Aeronautics Act, establishing a single administrative aviation agency, the Civil Aeronautics Authority.  Pub. L. No. 75-706, 52 Stat. 973 (1938) (codified as amended in scattered sections of 49 U.S.C.).  Congress included in the Act a general remedies saving clause, providing that the legislation did not alter common law or statutory remedies then in existence.  Id. § 1106, 52 Stat. at 1027.

Authority over the airspace was again divided when, a few years later, the Civil Aeronautics Authority was divided into two segments, the Civil Aeronautics Board and the Civil Aeronautics

Administration, the latter operating under the control of the
Secretary of Commerce.  H.R. Rep. No. 85-2360, at 3.  The
executive branch further diluted authority in 1946 by creating
the Air Coordinating Committee to act on certain matters.  Id.

In an effort to centralize authority, Congress enacted the
Federal Aviation Act of 1958, establishing the Federal Aviation
Agency to foster civil aviation, promulgate regulations for the
safety and efficiency of civil and military air operations, and
develop a common system of air traffic control and navigation.
Pub. L. No. 85-726, § 103, 72 Stat. 731, 740 (1958) (codified as
amended in scattered sections of 49 U.S.C.).  Congress retained
the Civil Aeronautics Board to oversee certain areas of the
airline industry, including economic regulation.  Id. §§ 204,
401-416, 72 Stat. at 743, 754-71.  Congress also preserved the
saving clause from earlier legislation.  Id. § 1106.

Over the next two decades, the airlines were subject to
extensive economic regulation which Congress eventually deemed
"highly anticompetitive."  H.R. Rep. No. 95-1211, at 2 (1978),
reprinted in 1978 U.S.C.C.A.N. 3737, 3738.  Congress thus enacted
the Airline Deregulation Act of 1978 in order to phase out the
onerous economic restrictions constraining the airlines,
encourage competition, and ultimately abolish the Civil
Aeronautics Board.  Pub. L. No. 95-504, 92 Stat. 1705 (1978)
(codified as amended in scattered sections of 49 U.S.C.).  To

prevent the states from imposing their own regulations on the airlines, Congress included a preemption clause forbidding the states from regulating the airlines' rates, routes, or services. Id. § 4(a), 92 Stat. at 1707-08 (codified at 49 U.S.C.App. § 1305(a)(1)).  When Congress later recodified Title 49, it relocated the preemptive language of the Airline Deregulation Act to 49 U.S.C. § 41713, and rephrased the provision slightly to reflect stylistic changes.  Pub. L. No. 103-272, 108 Stat. 745 (1994).

In relevant part, the final preemptive language reads: "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ."  49 U.S.C. § 41713(b)(1).  It is the interpretation of this preemptive language that lies at the heart of these two putative class actions: Mitchell v. US Airways, Inc. and Brown v. United Air Lines, Inc.

**A.    Background**[1]

**1.    Mitchell v. US Airways, Inc.**

---

[1] These cases were originally assigned to Judge Nancy Gertner, and Judge Gertner is referred to herein as the "court." This Court was assigned Mitchell and Brown on September 23, 2011. Given their complex procedural history, a thorough recitation of the procedural posture of these cases is necessary.

Mitchell v. US Airways, Inc. is a putative class action brought on behalf of skycaps working at airports throughout the United States ("Mitchell Skycaps") for US Airways, Inc. ("US Airways"). The Mitchell Skycaps assert seven counts: (1) violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq.; (2) tortious interference with the implied contractual or advantageous relationship between the Mitchell Skycaps and US Airways's customers; (3) unjust enrichment; (4) violation of Massachusetts General Law, chapter 149, section 152A (the "Massachusetts Tip Law"); (5) tortious interference with the contractual or advantageous relationship between the Mitchell Skycaps and the contractor companies who employed them; (6) termination in violation of public policy; and (7) retaliation in violation of Massachusetts General Law, chapter 149, section 148A. US Airways has submitted three motions presently before the Court: (1) a motion to dismiss Counts Two through Seven of the Fourth Amended Complaint on the theory that all of the claims are preempted by Section 105 of the Airline Deregulation Act of 1978 (the "Airline Deregulation Act"), and on the additional theory that the Mitchell Skycaps lack standing as to Counts Five through Seven; (2) a motion for summary judgment on Count One of the Fourth Amended Complaint on the theory that no violation of the Fair Labor Standards Act occurred; and (3) a motion to dismiss Counts Five and Six of the Fourth Amended Complaint on

the theory that the claims are preempted by the Railway Labor Act.

This memorandum addresses US Airways's motion to dismiss on the ground of preemption by the Airline Deregulation Act only as to Counts Two, Three, Four, and Seven, and US Airways's motion for summary judgment on Count One. The Court does not rule in this memorandum on US Airways' remaining motions regarding Counts Five and Six.

### a. Initial Proceedings

The Mitchell Skycaps commenced this action against US Airways and Prime Flight Aviation Services, Inc. ("Prime Flight") on April 11, 2008. Compl., ECF No. 1. On May 15, 2008, the Mitchell Skycaps amended their complaint as of right, dropping Prime Flight as a defendant and replacing the Fair Labor Standards Act minimum wage claim in Count One with a Massachusetts Tip Law claim. Am. Compl., ECF No. 4. On June 30, 2008, the Mitchell Skycaps filed the Second Amended Complaint, with US Airways's assent, which again joined Prime Flight as a defendant and reasserted the Fair Labor Standards Act minimum wage claim. Second Am. Compl., ECF No. 11.

On August 18, 2008, US Airways filed a motion to dismiss the Second Amended Complaint. Def. US Airways's Mot. Dismiss, ECF No. 22. The Mitchell Skycaps filed a motion again to amend their complaint, proposing twelve additional plaintiffs, some of whom

were employed by Prime Flight and others of whom were employed by G2 Secure Staff, LLC ("G2"). Pls.' Mot. Leave File Third Am. Compl., ECF No. 24. In September 2008, US Airways withdrew its motion to dismiss, Def. US Airways's Assented-to Mot. Withdraw Mot. Dismiss Second Am. Compl., ECF No. 38, and the Mitchell Skycaps filed their assented-to Third Amended Complaint on September 23, 2008, Third Am. Compl., ECF No. 33. Prime Flight filed its answer on October 14, 2008. Answer Prime Flight Aviation Services Pls.' Third Am. Compl., ECF No. 46. On October 30, 2009, the Mitchell Skycaps again filed a motion to amend their complaint, Pls.' Mot. Leave File Fourth Am. Compl., ECF No. 112, which motion was granted by the court on September 8, 2010, Electronic Order, Sept. 8, 2010. The Mitchell Skycaps filed their Fourth Amended Complaint ("Mitchell Complaint"), the operative pleading, on June 24, 2011, making changes to reflect a settlement with Prime Flight and adding an additional claim for tortious interference. Fourth Am. Compl. ("Mitchell Compl."), ECF No. 137.

### b. Partial Motion to Dismiss Based on Preemption by the Airline Deregulation Act

On October 10, 2008, US Airways filed a partial motion to dismiss the Mitchell Skycaps' Third Amended Complaint, arguing that Counts Two, Three, Four, Seven and Eight are preempted by the Airline Deregulation Act, and that the Mitchell Skycaps' retaliation and wrongful termination claims, Counts Two and Three

7

of the Third Amended Complaint, also fail as matter of law.  Def.
US Airways's Partial Mot. Dismiss, ECF No. 41; Def. US Airways's
Mem. Law Supp. Partial Mot. Dismiss Pls.' Third Am. Compl. 4, ECF
No. 42.  The Mitchell Skycaps opposed the motion, Pls.' Opp'n
Def. US Airways's Mot. Dismiss, ECF No. 50, and US Airways filed
a reply, Def. US Airways's Reply Mem. Further Supp. Partial Mot.
Dismiss Pls.' Third Am. Compl., ECF No. 59.  The court granted
the motion on September 22, 2009, dismissing Counts Two, Three,
Four, Seven and Eight.  Electronic Order, Sept. 22, 2009.  The
Mitchell Skycaps filed a motion for reconsideration on October
30, 2009, Pls.' Mot. Recons. Court's Decision Granting Def. US
Airways's Mot. Dismiss, ECF No. 113, US Airways opposed the
motion, Opp'n Pls.' Mot. Recons. Court's Decision Granting US
Airways's Partial Mot. Dismiss, ECF No. 116, the Mitchell Skycaps
filed a reply, Pls.' Reply Br. Supp. (1) Mot. Recons. Court's
Decision Granting Def. US Airways's Mot. Dismiss (2) Mot. Leave
File Fourth Am. Compl., ECF No. 126, and US Airways filed a
surreply, US Airways's Reply Pls.' Jan. 19, 2010 Submission
Addressing (1) Pls.' Mot. Recons. Court's Ruling Granting US
Airways's Partial Mot. Dismiss (2) Pls.' Mot. File Fourth Am.
Compl., ECF No. 130.  On September 8, 2010, the court granted the
Mitchell Skycaps' motion to reconsider and vacated its previous
order which had granted US Airways's partial motion to dismiss.
Mem. Order, ECF No. 131.

On October 12, 2010, the parties filed a joint motion to stay the proceedings pending the First Circuit's decision in the appeal of _DiFiore_ v. _American Airlines, Inc._, 688 F. Supp. 2d 15 (D. Mass. 2009). Joint Mot. Stay Proceedings, ECF No. 136. The court granted the motion the following day. Electronic Order, Oct. 13, 2010.

The stay was lifted in June 2011, and US Airways again moved to dismiss Counts Two through Seven of the _Mitchell_ Complaint on the grounds of preemption under the Airline Deregulation Act, lack of standing to bring the retaliation claims, and statutory preclusion of the common law retaliation claims. Def. US Airways's Partial Mot. Dismiss Pls.' Fourth Am. Compl., ECF No. 141; Mem. Points Authorities Supp. US Airways Inc.'s Partial Mot. Dismiss Fourth Am. Compl. ("_Mitchell_ Def.'s Mem. Mot. Dismiss (ADA Preemption)"), ECF No. 142. The _Mitchell_ Skycaps opposed the motion, Pls.' Opp'n Def. US Airways Inc.'s Mot. Dismiss ("_Mitchell_ Pls.' Opp'n Mot. Dismiss (ADA Preemption)"), ECF No. 144, US Airways filed a reply, Reply Supp. Def. US Airways's Partial Mot. Dismiss Fourth Am. Compl., ECF No. 145, and the _Mitchell_ Skycaps filed a surreply, Pls.' Surreply Opp'n Def. US Airways, Inc.'s Mot. Dismiss ("_Mitchell_ Pls.' Surreply (ADA Preemption)"), ECF No. 146. This Court heard oral argument on the motion on November 16, 2011, and took the matter under advisement.

### c. Motion for Summary Judgment of Count One Under the Fair Labor Standards Act

On October 29, 2009, US Airways moved for summary judgment on Count One of the Third Amended Complaint.[2] Mot. Summ. J. US Airways's Incorporated Mem. Law ("Mitchell Def.'s Mot. Summ. J."), ECF No. 110. The Mitchell Skycaps opposed the motion, Pls.' Opp'n Def. US Airways's Mot. Summ. J. ("Mitchell Pls.' Opp'n Mot. Summ. J."), ECF No. 118, and US Airways filed a reply, Reply Supp. US Airways's Mot. Summ. J. ("Mitchell Def.'s Reply Summ. J."), ECF No. 123. The Mitchell Skycaps filed an assented-to motion to stay the filing of their surreply brief for four weeks, as the Mitchell Skycaps were in settlement discussions with G2. Pls.' Assented-to Mot. Stay Surreply Opp'n Def. US Airways's Mot. Summ. J. Count I Compl., ECF No. 127. The settlement talks with G2 apparently failed, as there is no further mention of settlement with G2 in the record, and the Mitchell Skycaps never filed a surreply. The court denied US Airways's motion without prejudice on September 8, 2010, in light of its reconsideration of US Airways's partial motion to dismiss based on Airline Deregulation Act preemption, and its allowance of the Mitchell Skycaps' motion to file the Fourth Amended Complaint. Electronic Order, Sept. 8, 2010.

---

[2] At the time the motion was filed, the court had dismissed the other claims in the Mitchell Complaint and Count One was the last surviving claim. See Mot. Summ. J. US Airways's Incorporated Mem. Law 1, ECF No. 110.

On June 29, 2011, US Airways renewed its previously filed and fully briefed motion for summary judgment. Def. US Airways's Renewed Mot. Summ. J., ECF No. 140. On July 7, 2011, the Mitchell Skycaps renewed their opposition to the motion, relying on their previously filed brief.[3] Pls.' Renewed Opp'n Def. US Airways's Mot. Summ. J., ECF No. 143. This Court heard oral argument on the motion on November 16, 2011, and took the matter under advisement.

### d. Partial Motion to Dismiss Based on Preemption Under the Railway Labor Act

On October 19, 2011, US Airways moved to dismiss Counts Five and Six of the Mitchell Complaint on the theory that the claims are preempted under the Railway Labor Act. Def. US Airways's Partial Mot. Dismiss Pls.' Fourth Am. Compl., ECF No. 154; Mem. Points Authorities Supp. US Airways's Partial Mot. Dismiss Fourth Am. Compl., ECF No. 155. The Mitchell Skycaps opposed the motion on November 7, 2011. Pls.' Opp'n Def.'s Partial Mot. Dismiss, ECF No. 159. The Court heard oral argument on the motion on November 16, 2011, and took the matter under advisement.

---

[3] The Mitchell Skycaps only renewed their opposition as to plaintiffs Lee Hardin and Steven McCoy. Pls.' Renewed Opp'n Def. US Airways's Mot. Summ. J. 1, ECF No. 143. The Mitchell Skycaps conceded that summary judgment was proper as to Kevin Davis because, as they noted in their original opposition to summary judgment, he earned a minimum wage exclusive of tips. Mitchell Pls.' Opp'n Def.'s Mot. Summ. J. 2 n.1.

**e.    Settlement Between Prime Flight and the**
**      <u>Mitchell</u> Skycaps Employed by Prime Flight**

After reaching a proposed settlement with Prime Flight in
the amount of $750,000.00, the <u>Mitchell</u> Skycaps filed a motion
for preliminary approval of the settlement and permission to send
notices to class members on June 17, 2009, Pls.' Mot. Prelim.
Approval Class Action Settlement Permission Send Notices Class
Members, ECF No. 73, which motion was granted by the court after
hearing oral argument on the matter, Electronic Order, June 23,
2009.  Some of the putative class members objected to the
settlement, Objection Class Action Settlement Notice Intention
Appear Corey Eaddy, Timothy Robinson, Marshal Glass, Clarence
Glaster, Anthony Walter, ECF No. 91, and others moved to
intervene and set aside the court's preliminary approval, Mot.
Intervene Class Action Settlement Set Aside Court's Order
Granting Prelim. Approval Class Action Settlement, ECF No. 77.
The court denied the motion to intervene, Electronic Order, Sept.
22, 2009, and issued a final approval of the settlement,
Electronic Order, Sept. 24, 2009.

The settlement resulted in the dismissal of the minimum wage
violation claims and retaliatory discharge claims, specifically
Counts One, Five, Six, Seven and Eight of the Third Amended
Complaint, brought by the <u>Mitchell</u> Skycaps employed by Prime
Flight (the "Prime Flight <u>Mitchell</u> Skycaps").  <u>Mitchell</u> Pls.'
Mot. Approval Settlement 2.  The settlement precluded any further

12

claims by the Prime Flight <u>Mitchell</u> Skycaps against US Airways that require US Airways to be considered the <u>Mitchell</u> Skycaps' employer or joint employer. <u>Id.</u> The Prime Flight <u>Mitchell</u> Skycaps remain in the lawsuit against US Airways as to Count Two (tortious interference with contractual or advantageous relations with US Airways passengers), Count Three (unjust enrichment), and Count Five (tortious interference with contractual or advantageous relations with their contractor employer). <u>Id.</u> at 3. The settlement has no effect on the <u>Mitchell</u> Skycaps employed by G2. <u>See</u> <u>id.</u> at 2.

The parties filed a joint motion to direct entry of final judgment as to the settlement approval and the denial of the motion to intervene, Agreed Mot. Direct Entry Final J. Pursuant Rule 54(b), ECF No. 103, and the court entered a final judgment on November 10, 2009, Final Judgment, ECF No. 115. This order ended the litigation as to Prime Flight[4] and enabled the Prime Flight <u>Mitchell</u> Skycaps to receive payment under the settlement within forty-five days of the court's order becoming final and not subject to appeal. Electronic Order, Nov. 2, 2009.

### f. Class Certification

On November 14, 2008, the <u>Mitchell</u> Skycaps filed a motion

---

[4] Curiously, Prime Flight's counsel filed a notice of appearance before this Court on September 30, 2011. A review of the docket indicates that Prime Flight is no longer a defendant in the <u>Mitchell</u> litigation pursuant to the court's final judgment of November 10, 2009.

for class certification of the claims of tortious interference
with contractual or advantageous relations with US Airways
customers (Count Two of the Mitchell Complaint) and unjust
enrichment (Count Three of the Mitchell Complaint). Pls.' Mot.
Class Certification Pursuant Fed. R. Civ. P. 23 Mem. Supp.
Thereof, ECF No. 53. Prime Flight opposed the motion. Def.
Prime Flight Aviation Services, Inc.'s Resp. Opp'n Pl.'s Mot.
Class Certification, ECF No. 62. US Airways filed a cross-motion
to deny without prejudice or stay the Mitchell Skycaps' motion
for class certification pending the court's ruling on US
Airways's partial motion to dismiss those claims on the ground of
preemption under the Airline Deregulation Act. US Airways's
Cross-Mot. Stay Pls.' Mot. Class Certification Pursuant Fed. R.
Civ. P. 23, Alternatively Req. Deny Such Mot. Without Prejudice,
ECF No. 63. On September 28, 2009, the court issued an order
holding the motion for class certification moot, as the court had
at that point dismissed the relevant claims pursuant to US
Airways's partial motion to dismiss. Electronic Order, Sept. 28,
2009. The court stated that the motion could be re-filed if the
court granted the Mitchell Skycaps' motion for reconsideration.
Id. No subsequent motions have been filed to certify a class.

### g. Motion To Consolidate

On July 21, 2011, the Mitchell Skycaps filed a motion to
consolidate their case with DiFiore v. American Airlines, Civil

14

Action No. 07-10070 (D. Mass.), and <u>Overka</u> v. <u>American Airlines</u>, Civil Action No. 08-10686 (D. Mass.). Pls.' Mot. Consolidate Case With Similar Cases Filed Against American Airlines, ECF No. 147. US Airways opposed the motion, US Airways's Opp'n Pls.' Mot. Consolidate, ECF No. 148, and the <u>Mitchell</u> Skycaps filed a reply, Pls.' Reply Supp. Mot. Consolidate, ECF No. 152. This Court entertained argument related to the motion on October 3, 2011, and denied the motion from the bench.

## 2. <u>Brown</u> v. <u>United Air Lines, Inc.</u>

<u>Brown</u> v. <u>United Air Lines, Inc.</u> is a putative class action brought on behalf of skycaps working at airports throughout the United States ("<u>Brown</u> Skycaps") for United Air Lines, Inc. ("United Air Lines"). The <u>Brown</u> Skycaps assert three counts: (1) violation of the Massachusetts Tip Law, Massachusetts General Law chapter 149, section 152A; (2) tortious interference with the implied contractual or advantageous relationship between the <u>Brown</u> Skycaps and United Air Lines customers; and (3) unjust enrichment. United Air Lines moved to dismiss the Amended Complaint on the ground that the claims are preempted by the Airline Deregulation Act.

### a. Complaints

The <u>Brown</u> Skycaps commenced this action against United Air Lines on April 23, 2008. Class Action Compl., ECF No. 1. The <u>Brown</u> Skycaps filed an amended complaint ("<u>Brown</u> Complaint") as

15

of right on August 11, 2008.  Am. Class Action Compl. ("Brown Compl."), ECF No. 10.

### b. Motion to Dismiss Based on Preemption Under the Airline Deregulation Act

On August 13, 2008, United Air Lines moved to dismiss the Brown Complaint on the ground that the claims were preempted by the Airline Deregulation Act.  Def. United Air Lines Inc.'s Mot. Dismiss, ECF No. 12.  The Brown Skycaps opposed the motion, Pls.' Opp'n Def.'s Mot. Dismiss, ECF No. 38, and United Air Lines filed a reply, Def.'s Reply Mem. Supp. Mot. Dismiss, ECF No. 41.  On March 26, 2009, the court denied the motion to dismiss, citing the authority of DiFiore, 483 F. Supp. 2d 121.  Electronic Order, Mar. 26, 2009.

On April 7, 2009, United Air Lines filed a motion for reconsideration of the court's order denying United Air Lines' motion to dismiss.  Def.'s Mot. Recons., Alternative Interlocutory Appeal From, Order Denying Def.'s Mot. Dismiss, Stay Proceedings, ECF No. 44.  The Brown Skycaps opposed the motion.  Pls.' Opp'n Def.'s Mot. Recons., Alternative Interlocutory Appeal From, Order Denying Def.'s Mot. Dismiss, Stay Proceedings, ECF No. 47.  On September 22, 2009, the court granted United Air Lines's motion for reconsideration and, in so doing, granted United Air Lines's motion to dismiss the Brown Complaint.  Mem. Order Def.'s Mot. Recons., Alternative Interlocutory Appeal From, Order Denying Def.'s Mot. Dismiss,

Stay Proceedings, ECF No. 60.

On October 6, 2009, the <u>Brown</u> Skycaps filed a motion for reconsideration of the court's order dismissing the case. Pls.' Mot. Recons. Court's Decision Granting Def.'s Mot. Dismiss, ECF No. 62. United Air Lines opposed the motion, Def.'s Opp'n Pls.' Mot. Recons. Order Granting Mot. Dismiss, ECF No. 63, the <u>Brown</u> Skycaps filed a reply, Pls.' Reply Br. Supp. Mot. Recons. Court's Decision Granting Def.'s Mot. Dismiss, ECF No. 65, and United Air Lines filed a surreply, Def.'s Surreply Opp'n Pls.' Mot. Recons., ECF No. 67. On September 8, 2010, the court granted the <u>Brown</u> Skycaps' motion to reconsider, and reopened the case. Mem. Order, ECF No. 69. The parties filed a joint motion to stay the proceedings pending the First Circuit's decision in the appeal of <u>DiFiore</u>, 688 F. Supp. 2d 15. Joint Mot. Stay Proceedings Pending First Circuit's Decision <u>DiFiore</u> v. <u>American Airlines</u>, ECF No. 70. The court granted the motion and imposed a stay on September 21, 2010. Electronic Order, Sept. 21, 2010.

On June 3, 2011, following the First Circuit's decision in <u>DiFiore</u> v. <u>American Airlines, Inc.</u>, 646 F.3d 81 (1st Cir. 2011), United Air Lines renewed its previous motion to dismiss on the ground that the <u>Brown</u> Skycaps' claims are preempted by the Airline Deregulation Act. Renewed Mot. Dismiss, ECF No. 76; Mem. Law Supp. Renewed Mot. Dismiss ("<u>Brown</u> Def.'s Mem. Mot. Dismiss"), ECF No. 77. The <u>Brown</u> Skycaps filed an opposition,

Pls.' Opp'n Def.'s Renewed Mot. Dismiss ("Brown Pls.' Opp'n Mot. Dismiss"), ECF No. 78, United Air Lines filed a reply, Reply Supp. Renewed Mot. Dismiss, ECF No. 80, and the Brown Skycaps filed a surreply, Pls.' Surreply Opp'n Def.'s Renewed Mot. Dismiss ("Brown Pls.' Surreply"), ECF No. 82. This Court heard oral argument on the motion on November 16, 2011, and took the matter under advisement.

### c. Class Certification

On August 11, 2008, the Brown Skycaps moved to certify a class for the claims of tortious interference with contractual or advantageous relations with United Air Lines customers (Count Two) and unjust enrichment (Count Three). Pls.' Mot. Class Certification Pursuant Fed. R. Civ. P. 23 Mem. Supp. Thereof, ECF No. 9. United Air Lines filed a motion to stay the Brown Skycaps' motion for class certification pending the court's ruling on United Air Lines's motion to dismiss. Def. United Air Line [sic] Inc.'s Mot. Stay Pls.' Mot. Class Certification Pursuant Fed. R. Civ. P. 23, ECF No. 15. The court denied the motion to stay, Electronic Order, Mar. 26, 2009, and United Air Lines filed an opposition to the motion for class certification on May 22, 2009, Def. United Air Lines, Inc.'s Opp'n Pls.' Mot. Class Certification Pursuant Fed. R. Civ. P. 23, ECF No. 48. The Brown Skycaps filed a reply, Pls.' Reply Br. Supp. Pls.' Mot. Class Certification, ECF No. 53, and United Air Lines filed a

surreply, Def. United Air Lines, Inc.'s Surreply Further Supp.
Opp'n Pls.' Mot. Class Certification, ECF No. 54.

After hearing oral argument and taking the matter under
advisement on June 29, 2009, the court ordered the parties to
brief the various states' common law provisions regarding
tortious interference and unjust enrichment, including the
essential elements of each claim, limiting doctrines, damages,
and affirmative defenses.  Order, ECF No. 52.  The <u>Brown</u> Skycaps
filed their brief on July 7, 2009, Pls.' Supplemental Mem.
Concerning Similarities Between State Common Law Claims Proposed
Jury Instructions, ECF No. 55, and United Air Lines filed its
brief on July 14, 2009, Def. United Air Lines, Inc.'s Opp'n Pls.'
Supplemental Mem. Concerning Similarities Between State Common
Law Claims Proposed Jury Instructions, ECF No. 56.  The court
held the motion for class certification moot as of September 22,
2009, when the court granted United Air Lines's motion to
dismiss.  Order Granting Def.'s Mot. Dismiss 10.  No further
motion for class certification was filed after the case was
reopened in September 2010.

### d.    Motion To Consolidate

On July 21, 2011, the <u>Brown</u> Skycaps filed a motion to
consolidate with <u>DiFiore</u> v. <u>American Airlines</u>, Civil Action No.
07-10070 (D. Mass.), and <u>Overka</u> v. <u>American Airlines</u>, Civil
Action No. 08-10686 (D. Mass.).  Pls.' Mot. Consolidate Case With

19

Similar Cases Filed Against American Airlines, ECF No. 83.

United Air Lines opposed the motion on August 4, 2011, Opp'n Mot.

Consolidate, ECF No. 84, the Brown Skycaps filed a reply, Pls.'

Reply Supp. Mot. Consolidate Case With Similar Cases Filed

Against American Airlines, ECF No. 90, and United Air Lines filed

a surreply, Surreply Opp'n Mot. Consolidate, ECF No. 88. This

Court entertained argument related to the motion on October 3,

2011, and denied the motion from the bench.

## II.  ANALYSIS

### A.  Standard of Review

#### 1.  Motions to Dismiss

Under the Federal Rules of Civil Procedure, a complaint must

contain "a short and plain statement of the claim showing that

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To

survive a Rule 12(b)(6) motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to "state a

claim to relief that is plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007). A mere recital of the

legal elements supported only by conclusory statements is not

sufficient to state a cause of action. Ashcroft v. Iqbal, 556

U.S. 562, 129 S. Ct. 1937, 1949-50 (2009).

#### 2.  Motion for Summary Judgment

Summary judgment is proper where "there is no genuine

dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if there exists a sufficient evidentiary basis on which the trier of fact could find for the non-moving party. <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if it will affect the outcome of the case under the applicable law. <u>Id.</u> The moving party bears the burden of showing that no genuine issue of material fact exists. <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 323 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, 477 U.S. at 255. Save as to facts admitted by both parties, the court must disregard all evidence - even if unopposed - which the jury is free to reject, i.e., all evidence upon which a party bears the burden of proof. <u>Reeves</u> v. <u>Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 151 (2000). Thus, summary judgment may be granted when a fair-minded jury could reach only one conclusion: in favor of the moving party.

**B.** **<u>Mitchell</u> Partial Motion to Dismiss and <u>Brown</u> Motion to Dismiss Based on Airline Deregulation Act Preemption**

**1. Facts as Alleged**

The Skycaps[5] traditionally received most of their compensation from tips given to them by airline passengers.

---

[5] This memorandum will refer specifically to the <u>Mitchell</u> Skycaps or <u>Brown</u> Skycaps when the discussion relates only to one case, and will refer to the plaintiffs collectively as the Skycaps when the analysis is relevant to both cases.

<u>Brown</u> Compl. ¶¶ 1, 23; <u>Mitchell</u> Compl. ¶¶ 1, 25. In the last decade, airlines across the country, including United Air Lines in 2005 and US Airways in 2007, began assessing a $2.00 per bag charge for curbside check-in, and this charge was retained by the airlines and their contractor companies. <u>Brown</u> Compl. ¶¶ 1, 24, 27; <u>Mitchell</u> Compl. ¶¶ 1, 27, 29. As a result, the Skycaps' compensation has decreased dramatically, as some passengers thought the $2.00 charge was a mandatory gratuity, and others declined voluntarily to tip in addition to paying the $2.00 charge. <u>Brown</u> Compl. ¶¶ 1, 28, 29; <u>Mitchell</u> Compl. ¶¶ 1, 30, 31. United Air Lines and US Airways (collectively the "Airlines") did not adequately notify passengers that this charge was not a gratuity. <u>Brown</u> Compl. ¶ 30; <u>Mitchell</u> Compl. ¶ 32.

The <u>Mitchell</u> Complaint further alleges that US Airways intentionally and improperly misled the passengers to think the charge was a mandatory tip for the <u>Mitchell</u> Skycaps by establishing the fee in an amount typically given as a tip, and by requiring the fee to be paid in cash and collected by the <u>Mitchell</u> Skycaps. <u>Mitchell</u> Compl. ¶ 33.

### 2. Preemption Under the Airline Deregulation Act

The Airlines move to dismiss the claims in which the Skycaps allege (1) a violation of the Massachusetts Tip Law,

Massachusetts General Laws chapter 149, section 152A;[6] (2)

tortious interference with implied contractual or advantageous

relations between the Skycaps and the Airlines's customers;[7] and

(3) unjust enrichment.[8] <u>Brown</u> Def.'s Mem. Mot. Dismiss 1;

<u>Mitchell</u> Def.'s Mem. Mot. Dismiss (ADA Preemption) 1.  The

Airlines argue that the preemptive clause of the Airline

Deregulation Act, 49 U.S.C. § 41713(b)(1), precludes the Skycaps'

statutory and common law claims for relief.

The Skycaps concede that the First Circuit's recent decision

in <u>DiFiore</u>, 646 F.3d 81, controls their statutory claim under the

Massachusetts Tip Law and holds it to be preempted by the Airline

Deregulation Act.  <u>Brown</u> Pls.' Opp'n Mot. Dismiss 1 ("[T]he First

Circuit's ruling specifically found the plaintiffs' <u>statutory</u>

Tips Law claims to be preempted."); <u>Mitchell</u> Pls.' Opp'n Mot.

Dismiss (ADA Preemption) 1 n.1 ("Plaintiffs recognize that Count

IV, the claim under the Massachusetts Tips Law, is preempted

---

[6] This claim is Count One of the <u>Brown</u> Complaint, <u>Brown</u>
Compl. 7, and Count Four of the <u>Mitchell</u> Complaint, <u>Mitchell</u>
Compl. 10.

[7] This claim is Count Two of the <u>Brown</u> Complaint, <u>Brown</u>
Compl. 8, and Count Two of the <u>Mitchell</u> Complaint, <u>Mitchell</u>
Compl. 10.

[8] This claim is Count Three of the <u>Brown</u> Complaint, <u>Brown</u>
Compl. 8, and Count Three of the <u>Mitchell</u> Complaint, <u>Mitchell</u>
Compl. 10.

under the First Circuit's decision in <u>DiFiore</u> . . . .").[9]

The Skycaps argue, however, that their common law claims of tortious interference and unjust enrichment are outside the scope of <u>DiFiore</u>, and indeed outside the reach of Airline Deregulation Act preemption. <u>Brown</u> Pls.' Opp'n Mot. Dismiss 2-5; <u>Mitchell</u> Pls.' Opp'n Mot. Dismiss (ADA Preemption) 2-7. They assert that the preemption clause of the Airline Deregulation Act precludes only positive enactments by the states, not common law damages actions. <u>Brown</u> Pls.' Opp'n Mot. Dismiss 2; <u>Mitchell</u> Pls.' Opp'n Mot. Dismiss (ADA Premption) 2. The Skycaps further argue that implications embedded in the First Circuit's <u>DiFiore</u> opinion suggest that the Airline Deregulation Act does not preclude their common law claims. <u>Brown</u> Pls.' Opp'n Mot. Dismiss 2-3; <u>Mitchell</u> Pls.' Opp'n Mot. Dismiss (ADA Preemption) 3-7.

      **a.    The Preemptive Scope of "Law, Regulation, or Other Provision Having the Force and Effect of Law"**

The United States Constitution mandates that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art VI, cl. 2. Federal preemption of state action generally occurs in one of three ways: (1) express preemption, as when Congress includes explicit preemption

_____

[9] The Supreme Court has since denied certiorari in <u>DiFiore</u>. <u>DiFiore</u> v. <u>American Airlines, Inc.</u>, 132 S. Ct. 761 (2011).

24

language in an enactment; (2) field preemption, as when Congress's legislative scheme is so pervasive and broad that it implicitly preempts state action; and (3) conflict preemption, as when state action directly conflicts with a congressional enactment, or "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Weaver's Cove Energy, LLC v. Rhode Island Coastal Res. Mgmt. Council, 589 F.3d 458, 472-73 (1st Cir. 2009).

### (1) **Plain Language Analysis**

Because Congress provided an express preemption provision in the Airline Deregulation Act, the Court's initial task is to "identify the domain expressly pre-empted." Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 541 (2001). The Court ought give effect to the plain language of the preemption clause "unless there is good reason to believe Congress intended the language to have some more restrictive meaning." Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 521-22 (1992) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97 (1983)).

The plain language at issue in the Airline Deregulation Act is: "[A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law." 49 U.S.C. § 41713(b)(1). In order to "give effect . . . to every clause and word of [the] statute," Montclair v. Ramsdell, 107 U.S. 147, 152 (1883), the Court will parse the language in two

parts: first, "a State . . . may not enact or enforce a law [or] regulation," and second, "or other provision having the force and effect of law."

As to the first part of the preemption clause, this Court is instructed by the Supreme Court's decision in <u>Sprietsma</u> v. <u>Mercury Marine</u>, 537 U.S. 51 (2002). In <u>Sprietsma</u>, the Supreme Court unanimously[10] concluded that the preemptive language in the Federal Boat Safety Act, "a State may not establish, continue in effect, or enforce a law or regulation," did not encompass common law claims, but contemplated only positive enactments. <u>Id.</u> at

_____

[10] The unanimity of the <u>Sprietsma</u> decision is noteworthy in light of prior Supreme Court jurisprudence regarding the preemption clause of the Airline Deregulation Act. In <u>American Airlines, Inc.</u> v. <u>Wolens</u>, 513 U.S. 219 (1995), the majority noted that "the ban on enacting or enforcing any law . . . is most sensibly read . . . to mean 'States may not seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier.'" <u>Id.</u> at 229 n.5 (quoting the United States Amicus Curiae brief filed in <u>Wolens</u>). This language could be interpreted to refer indiscriminately to statutory or common law impositions of state public policy. Yet the Justices in the <u>Wolens</u> majority – Chief Justice Rehnquist and Justices Ginsburg, Kennedy, Souter, Breyer and Stevens – joined in the majority opinion in <u>Sprietsma</u>, holding that the language, "a State may not . . . enforce a law or regulation," encompassed only positive enactments.

Moreover, in partial concurrence and partial dissent in <u>Wolens</u>, Justice O'Connor, joined by Justice Thomas, wrote that personal injury claims against airlines are not preempted if they do not "relate" to "services," but noted that none of the cases so holding "has said that a State is not 'enforcing' its 'law' when it imposes tort liability on an airline." 513 U.S. at 239, 242 (O'Connor, J., concurring). Justices O'Connor and Thomas also joined in the majority opinion in <u>Sprietsma</u> holding that the language, "a State may not . . . enforce a law or regulation," encompassed only positive enactments. <u>Sprietsma</u>, 537 U.S. 51.

26

58-59, 63.  The Supreme Court noted that the article, "a,"
preceding "law or regulation" implied a discreteness evinced in
statutes and regulations that is absent in the common law.  Id.
at 63.  The Supreme Court further explained that "a word is known
by the company it keeps," and that if "law" were read so broadly
as to encompass common law, it would also encompass regulation,
making the express reference to "regulation" superfluous.  Id.
(citations omitted).

The preemption clause from Sprietsma is substantively the
same as that of the first part of the Airline Deregulation Act's
preemption clause.  As such, the clause, "a State . . . may not
enact or enforce a law [or] regulation," preempts only positive
state enactments, not common law actions.  See Sprietsma, 537
U.S. at 58-59.

Unlike the preemption clause at issue in Sprietsma, however,
the preemptive language of the Airline Deregulation Act is more
expansive.  The Airline Deregulation Act also precludes "other
provision[s] having the force and effect of law."  49 U.S.C. §
41713(b)(1).  The Supreme Court addressed the clause, "having the
force and effect of law," in dicta in American Airlines, Inc. v.
Wolens, 513 U.S. 219 (1995), and concluded that it "is most
naturally read to 'refe[r] to binding standards of conduct that
operate irrespective of any private agreement.'"  Id. at 229 n.5
(alteration in original) (quoting the United States Amicus Curiae

brief filed in the case).  Common law, defined in Black's Law

Dictionary as "[t]he body of law derived from judicial decisions,

rather than from statutes or constitutions," Black's Law

Dictionary 293 (8th ed. 2004), is indeed an externally-imposed

standard of conduct which is binding on the parties to the

lawsuit.  E.g., Harris v. Ford Motor Co., 110 F.3d 1410, 1414

(9th Cir. 1997) (nothing that "common law claims can impose

requirements equivalent to those written by a state legislature

or regulatory agency"); Matthew J. Kelly, Comment, Federal

Preemption By the Airline Deregulation Act of 1978: How Do State

Tort Claims Fare?, 49 Cath. U. L. Rev. 873, 893-94 (2000) ("[T]he

imposition of state-created duties upon airlines, through

judicially fashioned damage awards, amounts to state enforcement

of substantive standards of state law, having the effect of

directing the airlines to conform affirmatively to those

standards." (footnotes and citations omitted)).

Courts must "give effect, if possible, to every clause and

word of a statute, avoiding, if it may be, any construction which

implies that the legislature was ignorant of the meaning of the

language it employed." Montclair, 107 U.S. at 152.  In

particular, courts ought "assume that Congress used two terms

because it intended each term to have a particular,

nonsuperfluous meaning." Bailey v. United States, 516 U.S. 137,

146 (1995).  Under these principles of statutory construction, if

"law [or] regulation" is interpreted to denote a positive
enactment, "other provision having the force and effect of law"
ought be read to have a separate meaning, i.e., a common law
remedy.

## (2)    Legislative History Analysis

The legislative history of the Airline Deregulation Act
further buttresses this Court's interpretation that common law
remedies categorically fall within its preclusive scope.  The
clause originally read: "No State . . . shall enact or enforce
any law, <u>rule</u>, regulation, <u>standard</u>, or other provision having
the force and effect of law . . . ."  49 U.S.C.App. § 1305(a)(1)
(emphasis added).  It is difficult to imagine why Congress would
include the words "rule" and "standard" if it intended to denote
only positive state enactments.  <u>See</u> <u>Drake</u> v. <u>Laboratory Corp. of
Am. Holdings</u>, 458 F.3d 48, 59 (2d Cir. 2006) (concluding in the
context of a different statute that the words "rule," "order,"
and "standard," in addition to the words "law" and "regulation,"
"were included to indicate that the regulations may preempt
judge-made rules, orders, and standards, as well as statutes and
administrative rules and regulations").

When Congress recodified Title 49 in 1994, it revised the
language to read: "[A] State . . . may not enact or enforce a
law, regulation, or other provision having the force and effect
of law . . . ."  <u>Id.</u> § 41713(b)(1).  The House Report explained

that the changes were part of a larger effort toward uniform style and contemporary language usage in Title 49.  See H.R. Rep. No. 103-180, at 1 (1994), reprinted in 1994 U.S.C.C.A.N. 818 (stating that Congress's purpose was "to revise, codify and enact without substantive change certain general and permanent laws related to transportation"); id. at 3 ("In making changes in the language, precautions have been taken against making substantive changes in the law."); id. at 5 ("As in other codification bills enacting titles of the United States Code into positive law, this bill makes no substantive change in the law.").  Given these straightforward legislative statements, it appears Congress intended the preemptive language "law, regulation, or other provision having the force and effect of law" to have the same legal effect as it did when the clause included the words "rule" and "standard."

### (3)    Saving Clause Analysis

In recent years, the Supreme Court has shown a disinclination to hold state common law claims expressly precluded by a federal preemption clause where Congress has also included a saving clause in the statute preserving common law liability.  In Geier v. American Honda Motor Co., 529 U.S. 861 (2000), the Supreme Court held that the language, "no State . . . shall have any authority either to establish, or to continue in effect . . . any safety standard," id. at 867, did

30

not preempt common law actions - even though a broad reading of the clause suggested preemption - due to the existence of a saving clause stipulating that "[c]ompliance" with a federal safety standard "does not exempt any person from any liability under common law," id. at 868 (alteration in original).

The Supreme Court explained that the very presence of the saving clause "assumes that there are some significant number of common-law liability cases to save." Id. The Supreme Court further determined that the preemptive language in the statute permitted a narrow reading that excluded common law, and that in light of the saving clause, the preemption clause "must be so read." Id.; see also Williamson v. Mazda Motor of Am., Inc., -- U.S. --, 131 S. Ct. 1131, 1136 (2011) (applying the Geier framework in holding that the preemptive language did not expressly preclude common law claims); Sprietsma, 537 U.S. at 63 (stating that in light of Geier, the existence of a saving clause supported the Supreme Court's narrow reading of the preemption clause). The Geier Court went on to analyze the tort claim under ordinary conflict preemption principles to determine whether it "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" Geier, 529 U.S. at 873 (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). Under Geier and its progeny, the Supreme Court has thus demonstrated a preference in the presence of a saving clause to

hold common law claims not expressly precluded as a whole, but rather impliedly precluded on an individual basis should they frustrate the accomplishment of the federal law.

On the other hand, the Supreme Court historically has given little weight to the saving clause of the Airline Deregulation Act. In <u>Morales</u> v. <u>Trans World Airlines, Inc.</u>, 504 U.S. 374, 384-85 (1992), the Supreme Court applied the canon of statutory construction that "the specific governs the general," and rejected the petitioners' argument that the saving clause effected the scope of preemption under the Airline Deregulation Act. The Supreme Court noted that the saving clause was a "relic of the pre-ADA/no pre-emption regime"[11] and asserted, "we do not believe Congress intended to undermine this carefully drawn statute through a general saving clause." <u>Id.</u> at 385.

Three years later, the Supreme Court's treatment of the Airline Deregulation Act saving clause shifted slightly. While in <u>Morales</u>, <u>id.</u>, the Supreme Court essentially disregarded the saving clause in light of the preemption clause, in <u>Wolens</u>, 513 U.S. at 232, the Supreme Court noted a way to reconcile the clauses. Yet it seemed to do so as more of an afterthought than an integral part of the preemption analysis. <u>Id.</u> In dicta, the

---

[11] As mentioned <u>supra</u> in the Introduction, the saving clause originated in the Civil Aeronautics Act and was preserved by Congress in the Federal Aviation Act and the Airline Deregulation Act.

Supreme Court stated that its holding that the Airline Deregulation Act permits parties to bring breach of contract claims against the airlines "also makes sense of Congress' retention of the [Federal Aviation Act's] saving clause." Id. The Supreme Court explained that the preemption clause, read together with the saving clause, prohibited states from imposing their own substantive standards on the airlines, but preserved individuals' rights to enforce self-imposed obligations breached by the airlines.[12] Id. at 232-33. But in contrast to Geier, where reconciling the saving clause and preemption clause was central to determining the scope of express preemption, in Wolens, the saving clause analysis appeared peripheral.

A principled analysis of the saving clause of the Airline Deregulation Act therefore both ought adhere to the axiom that the existence of a saving clause assumes that there are some number of claims to save, and ought ensure that the preemption language at issue permits the narrow definition ascribed to it. See Geier, 529 U.S. at 868. Yet the analysis must also consider the limited weight the Supreme Court historically has given to the saving clause of the Airline Deregulation Act, as those cases

_____

[12] It is not clear that the Supreme Court meant to intimate that breach of contract claims are the only claims preserved by the saving clause. It seems a fair reading of Wolens, rather, that the Supreme Court noted that carving out this particular class of claims properly gave effect to the saving clause, without deciding it was the exclusive means of doing so.

comprise the controlling precedent.  See Morales, 504 U.S. at
385; Wolens, 513 U.S. at 232.

The saving clause of the Airline Deregulation Act reads: "A
remedy under this part is in addition to any other remedies
provided by law."  49 U.S.C. § 40120(c).  While this language
does not explicitly carve out common law remedies, its antecedent
version did precisely that: "Nothing contained in this [Act]
shall in any way abridge or alter the remedies now existing at
common law or by statute, but the provisions of this [Act] are in
addition to such remedies."  49 U.S.C. § 1506 (1976).  The House
Report stated that the amendments to the language of the saving
clause were stylistic only and not meant to have any substantive
effect.  1994 U.S.C.C.A.N. 818, 820.  Thus, the latter version of
the saving clause ought be given the same effect as the earlier
version, i.e. explicitly preserving common law remedies.[13]  And

_____

[13] In United Airlines, Inc. v. Mesa Airlines, Inc., 219 F.3d
605, 607 (7th Cir. 2000), the Seventh Circuit summarily declined
to extend Geier to the Airline Deregulation Act.  The court noted
that if the Airline Deregulation Act contained a broad clause
saving common law remedies, it might "overcome the understanding
that judgments in tort suits should be treated like state laws
and regulations to the extent they have the same practical effect
as laws and regulations."  Id.  The Seventh Circuit determined,
however, that the saving clause language, "[a] remedy under this
part is in addition to any other remedies provided by law," "does
not carve any domain from the scope of [preemption]."  Id.
   Yet the Seventh Circuit overlooked the legislative history
of the saving clause, namely that the original saving clause
included broad language explicitly preserving common law
remedies, and that Congress did not intend the amendment to have
any substantive effect.  The Seventh Circuit had, in an earlier
opinion, acknowledged that Congress recodified and amended the

34

the very presence of this saving clause in the Airline Deregulation Act "assumes that there are some significant number of common-law liability cases to save." Geier, 529 U.S. at 868.

Unlike the preemption clause at issue in Geier, however, the preemptive language of the Airline Deregulation Act does not permit a reading so narrow as to carve out all common law remedies from its scope. In Geier, the Supreme Court asserted that the language, "standard," could be read narrowly to exclude common law actions. 529 U.S. at 868. In contrast, the preemptive language of the Airline Deregulation Act reaches any "law, regulation, or other provision having the force and effect of law." 49 U.S.C. § 41713(b)(1).

As discussed supra, commonplace statutory principles mandate that every clause and word be given effect so that nothing is deemed mere surplusage. See, e.g., Montclair, 107 U.S. at 152. If the phrase, "law [or] regulation," is interpreted to denote positive state enactments, there is no other meaning that could be ascribed to "other provision having the force and effect of law" except for common law remedies. In order to hold that the saving clause carves out all common law remedies, this Court

---

express preemption clause in the Airline Deregulation Act, and noted that Congress intended the amendment to make no substantive change. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1430 n.7 (7th Cir. 1996). It is curious, then, why the legislative history of the saving clause should not similarly factor into the court's analysis.

would have to disregard an entire statutory clause, or hold it to be redundant of the prior clause. Such a reading is not permitted by the preemptive language of the Airline Deregulation Act. See generally E. Travis Ramey, Note, Congress Hatches the Egg: Justice Thomas's Textual Mandate Test for Preemption, 62 Ala. L. Rev. 1119, 1132 (2011) (reviewing Justice Thomas's opinions and voting record in the context of reconciling preemption and saving clauses, and concluding that "conflicting preemption and savings clauses should be resolved through resort to the text of the statute itself, with the provisions being reconciled in the same manner as any other conflicting provisions: through application of the ordinary rules of statutory construction").

That is not to say the saving clause therefore should be deemed meaningless. There appears to be a middle ground which would give effect to the saving clause while fairly construing the express preemptive language in the statute, and heed the limited weight historically given to the Airline Deregulation Act saving clause by the Supreme Court.

The memorandum has, until this point, sought to reconcile the saving clause only with regard to the first part of the preemption clause: "law, regulation, or other provision having the force and effect of law." 49 U.S.C. § 41713(b). The Court has proceeded in this manner because the Skycaps argue that

common law damages actions as a class are not preempted by the Airline Deregulation Act.  <u>Brown</u> Pls.' Opp'n Mot. Dismiss 2; <u>Mitchell</u> Pls.' Opp'n Mot. Dismiss (ADA Premption) 2.  Yet, as this Court has now determined, the express preemption language does not permit a narrow reading that categorically excludes common law claims from its reach.  It does not follow, however, that the saving clause is rendered completely ineffectual, because the express preemption clause of the Airline Deregulation Act contains its own narrowing language: "related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b).

The saving clause, read together with the preemption clause, ought properly be read to carve out all common law or statutory claims not related to an airline's prices, routes or services. This result may not seem particularly significant, as it is well established that the Airline Deregulation Act does not preclude claims that are not related to an airline's prices, routes or services.  Indeed, this is the primary mechanism by which plaintiffs defeat a defense of preemption under the Airline Deregulation Act.[14]  But those cases rely solely on the express

---

[14] <u>See</u> <u>Charas</u> v. <u>Trans World Airlines, Inc.</u>, 160 F.3d 1259, 1266 (9th Cir. 1998) (holding that "Congress did not intend to immunize the airlines from [personal injury] liability" and that "'service' does not refer to the pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling and storage of luggage, assistance to passengers in need, or like functions"; therefore, claims of negligence regarding these types of activities are not preempted because they are not "related to" "services"); <u>Smith</u> v. <u>Comair, Inc.</u>, 134 F.3d 254, 259 (4th Cir.

preemption clause in carving out particular claims.  This Court

now determines that the preservation of claims not related to an

airline's prices, routes or services is supported not only by a

careful reading of the preemption clause, but also by a synthesis

of the preemption clause and the saving clause.

The conclusion is significant in light of the Supreme

Court's recent movement in <u>Geier</u> and its progeny towards giving

saving clauses substantial weight in determining the scope of

federal preemption.  At first glance, it appeared the analysis in

<u>Geier</u> could ultimately overhaul the Airline Deregulation Act case

law.  But upon a more thorough analysis, it seems doubtful that

<u>Geier</u> will upset the status quo of statutory analysis under the

Airline Deregulation Act.  Rather, <u>Geier</u> can be harmonized within

the existing framework of the case law.

The statutory analysis in this case does not end here,

---

1998) (holding that the plaintiff's intentional tort claims are
preempted to the extent they are premised on the airline's
refusal to provide a "service," but are allowed to the extent the
airline's "outrageous conduct" "too tenuously relates or is
unnecessary to an airline's services"); <u>Travel All Over the
World, Inc.</u> v. <u>Kingdom of Saudi Arabia</u>, 73 F.3d 1423, 1433 (7th
Cir. 1996) ("<u>Morales</u> does not permit us to develop broad rules
concerning whether certain types of common-law claims are
preempted by the ADA.  Instead, we must examine the underlying
facts of each case to determine whether the particular claims at
issue 'relate to' airline rates, routes or services."); <u>Hodges</u> v.
<u>Delta Airlines, Inc.</u>, 44 F.3d 334, 336 (5th Cir. 1995) (noting
that the Airline Deregulation Act does not "displace state tort
actions for personal physical injuries or property damage caused
by the operation and maintenance of aircraft" because the claims
do not "relate to" "services").

however; as this Court has just stated, the claims are precluded only if they are "related to a price, route or service of an air carrier." See, e.g., Bates v. Dow Agrosciences LLC, 544 U.S. 431, 443-44 (2005) (observing that the fact that federal law "may pre-empt judge-made rules, as well as statutes and regulations, says nothing about the scope of that preemption").

**b.    The Scope and Application of DiFiore v. American Airlines, Inc.**

As to the issue of whether the common law claims of unjust enrichment and tortious interference are "related to a price, route, or service of an air carrier," this Court turns to the First Circuit's decision in DiFiore, 646 F.3d 81, for guidance.

In DiFiore, skycaps sued American Airlines, Inc. ("American Airlines") in a putative class action based on facts nearly identical to those alleged by the Mitchell and Brown Skycaps, claiming a violation of the Massachusetts Tip Law and seeking further relief under state common law. 646 F.3d at 84. The Massachusetts Tip Law provides that "[n]o employer or other person shall demand, request or accept from any . . . service employee . . . any payment or deduction from a tip or service charge given to such . . . service employee . . . by a patron." Mass. Gen. Laws ch. 149, § 152A(b). The term "service charge" is defined in the statute as

> a fee charged by an employer to a patron in lieu of a tip
> to any . . . service employee . . . ., including any fee
> designated as a service charge, tip, gratuity, or a fee

> that a patron or other consumer would reasonably expect
> to be given to a . . . service employee . . . in lieu of,
> or in addition to, a tip.

Id. § 152A(a).  The skycaps claimed that the $2.00 baggage fee
was a "service charge" that they were entitled to retain because
American Airlines passengers "reasonably expect[ed]" the fee to
be given to the skycaps.  646 F.3d at 84 (alteration in
original).  The case went to trial on the statutory claim and a
tortious interference claim, and the jury awarded each skycap
$2.00 for every bag he or she checked from September 2005 to the
start of trial, plus any fees collected during the trial in March
and April 2008.  See id.

American Airlines appealed the jury award, arguing, inter
alia, that the Massachusetts Tip Law is preempted by the Airline
Deregulation Act.  The First Circuit held that the Massachusetts
Tip Law impermissibly regulates American Airlines's "service," -
i.e., the checking-in and transportation of bags into the
terminal - and "price" - i.e., charges for such services - and is
therefore preempted by the Airline Deregulation Act.  646 F.3d at
87-88.  The court explained that in order to ensure the baggage
fee would not constitute a "service charge" owed to the skycaps
under the Massachusetts Tip Law, American Airlines would be
forced to change the way the skycap services were provided or
advertised.  See id. at 88.

The court rejected the skycaps' argument that compliance

measures were only "tenuously related" to services or prices (and therefore not preempted by the Airline Deregulation Act) if American Airlines could institute the changes without incurring significant expense or substantially altering the manner in which the service was provided.  <u>Id.</u>  The First Circuit held that the application of the Massachusetts Tip Law would have the same effect as a statute explicitly regulating the manner in which skycap services could be provided or advertised, which effect is prohibited no matter how high or low the cost to the airline. <u>Id.</u>

Indeed, the First Circuit posited that the Massachusetts Tip Law may be even more burdensome than state restrictions explicitly regulating the same, as the Massachusetts Tip Law would be interpreted by individual juries, who would "effectively design their own detailed, ad hoc compliance schemes based on the size, location and wording of the signs posted by the airline." <u>Id.</u>  American Airlines thus would be subject to countless (potentially conflicting) jury determinations within a state. <u>Id.</u>

The First Circuit emphasized that this scenario is precisely what Congress sought to prevent in enacting the Airline Deregulation Act.  <u>Id.</u> at 85, 88.  Allowing states to re-regulate the airlines, albeit indirectly and perhaps unwittingly, through provisions such as the Massachusetts Tip Law would trammel

Congress's regime of free competition.  See id. at 85.

The First Circuit did not address whether common law claims
based on the same underlying facts as the Massachusetts Tip Law
claim are precluded under the Airline Deregulation Act.  Instead,
the First Circuit noted that the skycaps' tortious interference
claim was premised on the jury's finding of a violation of the
Massachusetts Tip Law.  DiFiore, 646 F.3d at 89.  The tortious
interference claim therefore was reversed automatically when the
court reversed the Massachusetts Tip Law claim.  Id.

The Skycaps argue here that by expressly intertwining the
failure of the common law claim with the court's reversal of the
statutory claim, the First Circuit implicitly carved out common
law claims from Airline Deregulation Act preemption:

> [I]f common law claims were to be analyzed in the same
> fashion as statutory claims, there would have been no
> reason for the First Circuit to have based its analysis
> of the tortious interference claim on this ground; it
> could have instead more easily and readily stated that
> the claim was likewise a challenge to the $2 per bag
> charge and would therefore affect prices, routes, or
> services of the airline.  The fact that it did not must
> be read as an acknowledgment that the First Circuit
> recognized that common law claims, standing alone, are
> not preempted by the ADA.

Mitchell Pls.' Opp'n Mot. Dismiss (ADA Preemption) 5-6.[14]

---

[14] The Brown Skycaps draw further favorable inferences from
dicta in DiFiore regarding property theft.  The Brown Skycaps
argue – as the DiFiore skycaps argued – that the airline's
conduct is equivalent to putting out a jar labeled "tips" at the
skycap counter and then appropriating the money.  Brown Pls.'
Opp'n Mot. Dismiss 5.  The First Circuit rejected the argument in
DiFiore, 646 F.3d at 89, noting that American Airlines did not

Such inferences are unsupported in the First Circuit's
decision.  Rather, the narrow focus of <u>DiFiore</u>, limiting the
opinion to the statutory claim, ought be understood as the

---

tell customers that the $2.00 fee was a tip for the skycaps, and
it included disclaimer language on its signs that "a gratuity was
not included."  <u>Id.</u> (internal quotation marks omitted).  The
<u>DiFiore</u> court concluded that "property theft was not involved."
646 F.3d at 89.  The <u>Brown</u> Skycaps argue that the First Circuit
thereby "appear[ed] to acknowledge that such an outright theft
might be a 'conventional tort' which would not be preempted."

The <u>Brown</u> Skycaps further argue that the facts alleged in
the <u>Brown</u> Complaint are materially different from those alleged
in <u>DiFiore</u>, in that United Air Lines's sign advertising the $2.00
curbside bag fee did not, for "a long time," include disclaimer
language that "a gratuity was not included," while the signs in
<u>DiFiore</u> posted such language.  <u>Brown</u> Pls.' Opp'n Mot. Dismiss 5.

As a preliminary matter, it is not clear to this Court how
the cases are materially distinguishable: both United Air Lines
and American Airlines originally posted signs without a
disclaimer such as, "gratuity not included," and later added the
disclaimer.  <u>DiFiore</u>, 646 F.3d at 89; <u>Brown</u> Pls.' Opp'n Mot.
Dismiss 5.  Moreover, the <u>Brown</u> Skycaps have not alleged property
theft (or rather, conversion) in their complaint.  Thus, even if
the First Circuit did view property theft as the basis for a
"conventional tort" that is not preempted under the Airline
Deregulation Act, the <u>Brown</u> Skycaps have not alleged such a
claim.

Nor could the <u>Brown</u> Skycaps viably assert a claim of
conversion.  Conversion is established by showing that "one
person exercised dominion over the personal property of another,
without right, and thereby deprived the rightful owner of its use
and enjoyment."  <u>In re Hilson</u>, 448 Mass. 603, 611 (2007)
(citation omitted).  The <u>Brown</u> Skycaps have not argued that they
were the "rightful owner[s]" of the $2.00 baggage fee, nor could
they make such an argument based on the facts as alleged.  While
they do claim that the airline passengers reasonably expected the
fee to be retained by the <u>Brown</u> Skycaps, therefore constituting a
service charge under the Massachusetts Tip Law, Mass. Gen. Laws
ch. 149, § 152A(b), the <u>Brown</u> Skycaps <u>themselves</u> knew that the
fee was not their personal property, but rather the property of
United Air Lines that they collected as the airline's <u>agent</u>.  The
Court thus holds the <u>Brown</u> Skycaps' argument in this regard
unavailing.

exercise of proper judicial restraint, given that the common law claim necessarily was dismissed with the statutory claim.  See DiFiore, 646 F.3d at 89.

While DiFiore does not directly address the matter at hand, the First Circuit's reasoning foreshadows the same fate for the common law claims as befell the Massachusetts Tip Law claim.  The First Circuit's concern for patchwork de facto regulation resulting from jury verdicts is just as applicable to a jury's assessment of common law liability as it is to statutory liability.  Moreover, the claims are based on the same set of facts and alleged failures by the Airlines.  To avoid liability for tortious interference or unjust enrichment in the future, the Airlines would be forced to comply with a jury's "ad hoc compliance scheme" (and potentially, multiple juries' conflicting compliance schemes) and effectively be regulated thereby.

Because the Mitchell and Brown Skycaps' tortious interference and unjust enrichment claims would have the same prohibitive effect in application as the Massachusetts Tip Law claim, it seems they ought be precluded to the same extent.[15]  As the First Circuit has previously stated, Supreme Court

_____

[15] The Supreme Court stated in an unrelated context that "regulation can be as effectively exerted through an award of damages as through some form of preventative relief.  The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 247 (1959).

jurisprudence "teach[es] that, under the Airline Deregulation Act, the focus should be on the _effect_ that the state law has on airline operations." _New Hampshire Motor Transp. Ass'n_ v. _Rowe_, 448 F.3d 66, 78 (1st Cir. 2006), _aff'd_, 552 U.S. 364 (2008).

### c.  The _Wolens_ Exception

In a final attempt to save their unjust enrichment claim, the Skycaps argue that the claim fits within the carved-out exception to preemption for breach of contract actions.[16]  _Brown_ Pls.' Surreply 3 & nn.2-3; _Mitchell_ Pls.' Surreply (ADA Preemption) 1 n.1; _Mitchell_ Pls.' Opp'n Mot. Dismiss (ADA Preemption) 6.

In _Wolens_, 513 U.S. at 232-33, the Supreme Court held that

---

[16] Importantly, the Skycaps do not attempt to argue that the facts at issue in their tortious interference and unjust enrichment claims do not "relate to" "services."  Nor could they viably make such an argument, since the First Circuit expressly ruled on the matter in _DiFiore_, stating that

> the tips law does more than simply regulate the employment relationship between the skycaps and the airline; unlike the cited circuit cases, the tips law has a _direct connection_ to air carrier prices and services and can fairly be said to regulate both.  As to the latter, American's conduct in arranging for transportation of bags at curbside into the airline terminal en route to the loading facilities is itself a part of the "service" referred to in the federal statute, and the airline's "price" includes charges for such ancillary services as well as the flight itself.

_DiFiore_, 646 F.3d at 87.

breach of contract claims against airlines are not preempted by
the Airline Deregulation Act, provided that courts are only
enforcing airlines's self-imposed obligations.  The Supreme Court
explained that the Airline Deregulation Act

> stops States from imposing their own substantive
> standards with respect to rates, routes, or services, but
> not from affording relief to a party who claims and
> proves that an airline dishonored a term the airline
> itself stipulated.  This distinction between what the
> State dictates and what the airline itself undertakes
> confines courts, in breach-of-contracts actions, to the
> parties' bargain, with no enlargement or enhancement
> based on state laws or policies external to the
> agreement.

Id.  The Wolens Court thus made explicit that the exception is
limited to the enforcement of contracts, creating the necessary
implication that the exception does not provide an avenue for
parties to sue on an unjust enrichment theory, since such an
equitable remedy enforces external state law and policies.

Nevertheless, the Skycaps argue that their quasi-contract
claim of unjust enrichment ought be allowed to go forward under
the Wolens exception, because the Skycaps assert that "United
[and US Airways] promised customers that the bag charges would be
paid to the skycaps as tips, and the skycaps were beneficiaries
of that promise (and were harmed by the breach of that promise)."
Brown Pls.' Surreply 3 n.2; see Mitchell Pls.' Surreply (ADA
Preemption) 1 n.1.

A claim of unjust enrichment is by its very nature, however,
not a breach of contract claim.  Indeed, an unjust enrichment

claim is permissible only where there is no express agreement between the parties, and no express undertaking stipulated by the defendant. See, e.g., Santagate v. Tower, 64 Mass. App. Ct. 324, 329 (2005) (explaining that unjust enrichment is defined as the "retention of money or property of another against the fundamental principles of justice or equity and good conscience") (citations omitted). A claim for unjust enrichment is thus the antithesis of enforcing "a term the airline itself stipulated," Wolens, 513 U.S. at 232-33, and rather an example of a state "imposing [its] own substantive standards," id. at 232. As such, the Skycaps' unjust enrichment claims do not "navigate the straits of the Wolens exception." Buck v. American Airlines, Inc., 476 F.3d 29, 35 (1st Cir. 2007) (discussing the narrow scope of the Wolens exception).

**C. <u>Mitchell</u> Motion for Summary Judgment Based on Fair Labor Standards Act**

**1. Facts in the Light Most Favorable to the <u>Mitchell</u> Skycaps**[17]

The plaintiffs Kevin Davis ("Davis"), Lee Hardin ("Hardin")

---

[17] As required on motions for summary judgment, the factual summary presented here consists of undisputed facts as to which US Airways bears the burden of proof and disputed facts in the light most favorable to the <u>Mitchell</u> Skycaps, the non-moving party. The Court is to review the record as a whole, but "it must disregard all evidence favorable to the moving party that the jury is not required to believe." <u>Reeves</u>, 530 U.S. at 151. Accordingly, the Court must disregard evidence in favor of US Airways - even if uncontradicted - that the jury would be free to disbelieve. See id.

and Steven McCoy ("McCoy") (collectively, the "Mitchell G2 Skycaps") were employed jointly by G2 and US Airways. Pls.' Resp. Def. US Airways's Local R. 56.1 Statement Material Facts ("Mitchell Pls.' Resp. SOF") § I, ¶ 1, ECF No. 119. The Mitchell G2 Skycaps worked for G2, servicing US Airways in different locations across the country. Davis worked as a skycap at Los Angeles International Airport from 2006 to September 2008. Id. ¶ 2. Hardin worked as a skycap at the Indianapolis Airport from 2004 to September 2009. Id. McCoy worked as a skycap at the Dallas/Fort Worth Airport from 2006 until at least November 2009.[18] Id.

Davis was paid a minimum base wage of $9.00 per hour, exclusive of tips. Id. ¶ 4. Davis's wage was at all times greater than both the federal minimum wage (increasing over the relevant time period, with the highest amount of $7.25 per hour) and the California minimum wage ($8.00 per hour). Id. ¶¶ 3-4.

Hardin was paid $2.13 per hour until August 16, 2007, id. § 2, ¶ 1, at which time his wage increased to $5.15 per hour (below the federal minimum wage of $5.85 per hour), id. ¶ 3. As of July 4, 2008, Hardin's wage was reduced again to $2.13 per hour (below

---

[18] The briefs and statements of facts were filed in 2009, as the motion is currently "renewed" before the Court. The Skycaps filed their response to US Airways's statement of facts on November 12, 2009, in which they admitted that McCoy was employed with G2 until the "present." The record is unclear as to McCoy's subsequent employment history.

the federal minimum wage of $6.55 per hour in effect until July 24, 2009, and the subsequent increased minimum wage of $7.25 per hour). Id. ¶ 5. Hardin's base hourly wage was less than the federal minimum wage, but equal to or greater than minimum wage when combined with the tips he received. See id. ¶ 10.

McCoy was paid $2.13 per hour until August 16, 2007, id. ¶ 2, at which time his wage increased to $5.15 per hour (below the federal minimum wage of $5.85 per hour), id. ¶ 4. As of August 1, 2008, McCoy's hourly rate was increased to $6.55 (meeting the federal minimum wage of $6.55 per hour). Id. ¶ 6. Prior to August 1, 2008, McCoy's base hourly wage was less than minimum wage, but equal to or greater than minimum wage when combined with the tips he received. See id. ¶¶ 14-16.

Since the institution of the $2.00 per bag charge in 2007, the Mitchell G2 Skycaps have not retained all of their tips.[19] Mitchell Compl. ¶ 42. Rather, they had to pay[20] a portion of

---

[19] The Mitchell Skycaps do not specifically allege this in their statement of facts, but did originally allege this in the Mitchell Complaint, Mitchell Compl. ¶¶ 42-44, and again in their opposition to US Airways's motion for summary judgment, Mitchell Pls.' Opp'n Summ. J. 6-7.

[20] The allegations do not detail whether it was US Airways's policy for Mitchell Skycaps to reimburse the company for any fees they failed to collect, whether the Mitchell Skycaps' supervisors required or encouraged such behavior, or whether the Mitchell Skycaps made these repayments of their own accord. In their opposition brief, the Mitchell Skycaps argue that US Airways "routinely required Plaintiffs to pay it a portion of the tips they earned" to make up for any shortfall in fees. Mitchell Pls.' Opp'n Summ. J. 6.

their tips to US Airways for any "shortages" in the baggage fees. Id. ¶ 44. If a passenger failed to pay the $2.00 bag fee to US Airways when checking a bag with a <u>Mitchell</u> G2 Skycap, the skycap routinely would have to pay US Airways the fee out of his or her own tips. <u>Id.</u> Moreover, US Airways did not provide the <u>Mitchell</u> G2 Skycaps notice that the company took a "tip credit" against the minimum wage. <u>Id.</u> ¶ 45.

### 2. Minimum Wage Provision of the Fair Labor Standards Act

The Fair Labor Standards Act ("FLSA") requires an employer to pay to each of its employees a minimum wage, where that employee is engaged in commerce or employed in an enterprise engaged in commerce. 29 U.S.C. § 206(a). It is undisputed that the minimum wage provision applies to US Airways and the <u>Mitchell</u> G2 Skycaps. The parties contest, however, US Airways's entitlement to use a "tip credit" in calculating the hourly wage of the <u>Mitchell</u> G2 Skycaps.

Under the FLSA, an employer may be permitted to add the amount of tips actually received by an employee to the employee's base hourly wage to meet the federal minimum wage requirements. <u>Id.</u> § 203(m). Congress has placed limits on an employer's ability to apply this "tip credit," however, and these limits are strictly construed. <u>See</u> <u>Chung</u> v. <u>New Silver Palace Rest., Inc.</u>, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002). The tip credit is <u>wholly</u> inapplicable (1) if the employer failed to inform the

employee that the company intended to use the tip credit in calculating the employee's minimum wage; or (2) in the event that the employee does not retain all of the tips that he or she received, excluding participation in valid pooling arrangements. Id. Moreover, the employer bears the burden of proving its entitlement to the tip credit. Driver v. AppleIllinois, LLC, 265 F.R.D. 293, 298 (N.D. Ill. 2010) ("[Section 203(m)] makes clear the intent of Congress to place on the employer the burden of proving . . . the amount of tip credit, if any, which the employer may claim. . . . [T]he employer is responsible for ascertaining that the [minimum wage] provisions are complied with in compensating 'tipped employees.'" (citing U.S. Dep't of Labor, Field Operations Handbook § 30d00(b) (Rev. 563) (Dec. 9, 1988))).

If US Airways failed to comply with the FLSA's notice requirement, it would not be entitled to apply a tip credit towards the Mitchell G2 Skycaps' minimum wage, and would therefore be in violation of the FLSA's minimum wage provision as to both Hardin and McCoy. Similarly, if the Mitchell G2 Skycaps were forced to give US Airways a portion of their tips, US Airways would be unable to claim a tip credit, and would be in violation of the FLSA's minimum wage requirement. See Travers v. JetBlue Airways Corp., Civil Action No. 08-10730-GAO, 2010 WL 3835029, at *1 (D. Mass. Sept. 30, 2010) (O'Toole, J.) ("An employer is entitled to the tip credit only if 'all tips received

by [the] employee have been retained by the employee.'" (quoting 29 U.S.C. § 203(m))); see also Lujan v. Cabana Mgmt., Inc., No. 10-CV-755 (ILG), 2011 WL 317984, at *12 (E.D.N.Y. Feb. 1, 2011) (approving notice to putative class members where, inter alia, defendants allegedly appropriated servers' tips to cover losses, which would preclude defendants from taking a tip credit with respect to those employees).

The Mitchell G2 Skycaps allege that they were not properly informed of US Airways's use of the tip credit. Mitchell Compl. ¶ 45; see also Mitchell Pls.' Resp. SOF, Ex. 2, Relevant Dep. Excerpts, Steven McCoy Dep. ("McCoy Dep.") 27:11-18, 28:15, Oct. 26, 2009, ECF No. 119-3 ("Q. Okay. Are you aware of the fact that . . . $2.13, plus the tips you made per hour, all is a credit toward making the minimum wage?" "A. I never understood that . . . I never figured out how they were doing that. . . . No one ever explained that to me."). They further allege that they did not retain all of the tips they received. Mitchell Compl. ¶¶ 42-44; Mitchell Pls.' Opp'n Mot. Summ. J. 6-7. The Mitchell G2 Skycaps specifically allege that when a passenger failed to pay the $2.00 bag charge, they "had to make up these 'shortages' out of their own tips." Mitchell Compl. ¶ 44.

US Airways claims that the Mitchell G2 Skycaps were in fact notified of the tip credit and retained all of their tips. US Airways argues that it is entitled to summary judgment because

the <u>Mitchell</u> G2 Skycaps have offered no evidence to corroborate their claims, while US Airways has submitted evidence in support of its argument.[21] <u>Mitchell</u> Def.'s Reply Mot. Summ. J. 4-5.

US Airways bears the burden to show that it fully complied with the Section 203(m) requirements. <u>Driver</u>, 265 F.R.D. at 298. Given this burden of proof, <u>Reeves</u> dictates that this Court must disregard any evidence submitted by US Airways that a jury would be free to disbelieve. 530 U.S. at 151. Therefore, the Court will not consider for the purposes of this motion US Airways's submitted copies of the notice it allegedly provided to Hardin

---

[21] Specifically, US Airways submitted G2's Skycap Earned Tip Reporting Policy, signed by both Hardin and McCoy, explaining that skycaps' salary is comprised of an hourly wage and tips to reach a certain minimum wage. <u>Mitchell</u> Def.'s Reply Mot. Summ. J., Ex. 1, Skycap Earned Tip Reporting Policy, ECF No. 123-2. US Airways also submitted affidavits from Hardin and McCoy's respective supervisors, each stating that "[t]o the best of [his] knowledge, [the Skycap at issue] did not pay any baggage fees out of his tips . . . [and] never claimed or complained to [the supervisor] that he paid any baggage fees out of his tips." <u>Mitchell</u> Def.'s Reply Mot. Summ. J., Ex. 2, Decl. Anthony Luster, ECF No. 123-3 (McCoy's supervisor); <u>Mitchell</u> Def.'s Reply Mot. Summ. J., Ex. 3, Decl. Mark Schmidt, ECF No. 123-4 (Hardin's supervisor). Lastly, US Airways submitted the following excerpt from McCoy's deposition:

Q. There wasn't any management in the G2 tip pool, right? I'm sorry, there wasn't any management from G2 with whom you would have to share your tips, right?
A. No.

<u>Mitchell</u> Def.'s Reply Mot. Summ. J., Ex. 4, Steven McCoy Dep. Excerpt 23:8-12, ECF No. 123-5. US Airways argues that this evidence is "affirmative proof that Plaintiff's allegations in this regard cannot be proven." <u>Mitchell</u> Def.'s Reply Mot. Summ. J. 5.

and McCoy, and the statement by McCoy that he did not have to share his tips with management.  See supra at note 21.  US Airways may not shift the burden onto the Mitchell G2 Skycaps to produce evidence that US Airways failed to meet its qualifying obligations under the tip credit, when the burden rests with US Airways to make an affirmative showing that it was entitled to the credit.  Summary judgment is therefore denied as to Hardin and McCoy.

Unlike Hardin and McCoy, Davis received a wage which met the federal minimum wage requirement.  Davis was paid a base hourly wage of $9.00 per hour, in addition to any tips he received. This wage exceeds the highest federal minimum wage amount of $7.25 during the relevant time period.  Indeed, the Mitchell G2 Skycaps explicitly concede that Davis's wage did not violate the FLSA and oppose summary judgment only as to Hardin and McCoy. Summary judgment is therefore granted to US Airways as to Davis.

**III.    CONCLUSION**

For the foregoing reasons:

US Airways's partial motion to dismiss the Mitchell Complaint, ECF No. 141, is ALLOWED only as to Counts Two (Tortious Interference), Three (Unjust Enrichment), and Four (Massachusetts Tip Law).[22]  US Airways's motion for summary

---

[22] The Mitchell Skycaps voluntarily withdrew their claim in Count Seven (Massachusetts Wage Act).  Mitchell Pls.' Opp'n Mot. Dismiss (ADA Preemption) 1 n.1.

judgment on Count One of the <u>Mitchell</u> Complaint (Fair Labor Standards Act), ECF No. 140**,** is DENIED as to Lee Hardin and Steven McCoy, and GRANTED as to Kevin Davis.

United Air Lines's motion to dismiss the <u>Brown</u> Complaint, ECF No. 76, is ALLOWED in its entirety.

The Court will schedule a prompt hearing on the dispositive motions remaining in <u>Mitchell</u>, ECF Nos. 141 & 154.

**SO ORDERED.**


   /s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE