UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
BEN MITCHELL, WILMER PRESTON,       )
RICARDO ENGERMAN, DENNIS CASHMAN,   )
RAJI LAHCEN, DONALD WILLOUGHBY,     )
ANTHONY SMITH, STEPHEN TOUMA,       )
JOSEPH MATHIEU, ISAAC WILLIAMS,     )
KEVIN DAVIS, LEE HARDIN,            )
STEVEN McCOY, MICHAEL KALINOWSKI,   )
GERALD PEET,                        )    CIVIL ACTION
                                    )    NO. 08-10629-WGY
              Plaintiffs,           )
                                    )
         v.                         )
                                    )
US AIRWAYS, INC., PRIME FLIGHT      )
AVIATION SERVICES, INC.,            )
                                    )
              Defendants.           )
                                    )
```

MEMORANDUM & ORDER

YOUNG, D.J.                                           July 12, 2012

I.  INTRODUCTION

In its recent memorandum of decision of May 1, 2012, this Court examined the scope of preemption under the Airline Deregulation Act and held that the skycaps' statutory and common law claims regarding the airlines' methods for collecting a newly-imposed $2.00 baggage fee at curbside check-in were precluded.  Mitchell v. US Airways, Inc. (*Mitchell I*), Nos. 08-10629-WGY, 08-10689-WGY, --- F. Supp. 2d ---, 2012 WL 1512432 (D. Mass. May 1, 2012).  The decision disposed of Brown v. United

1

Airlines, Inc., No. 08-10689, in its entirety, and ruled on certain dispositive motions filed in Mitchell v. US Airways, Inc., No. 08-10629. Mitchell I, 2012 WL 1512432, at *21.

The Court has yet to resolve two counts in Mitchell, both of which arise out of the alleged retaliation by US Airways in discontinuing the use of skycaps nationwide for curbside check-in services following the filing of this putative class action. In count five, the skycaps allege that US Airways discontinued the use of skycaps as retaliation for the skycaps' lawsuit, which retaliation constitutes tortious interference with contractual or advantageous relations between the skycaps and the contractor companies who employed them (G2 Secure Staff, LLC ("G2") and Prime Flight Aviation Services, Inc. ("Prime Flight")). Fourth Am. Compl. ("Compl.") 11, ECF No. 137. In count six, the skycaps allege that their termination violated a Massachusetts public policy prohibiting retaliatory discharge. Id. There are two outstanding motions to dismiss by US Airways, arguing that counts five and six of the fourth amended complaint (the "Complaint") ought be dismissed for lack of standing, preemption under the Airline Deregulation Act, preemption under the Railway Labor Act, and statutory preemption of common law claims.

### A. Procedural History

The Court need not recite the extensive procedural history of this case, as it did so in its prior opinion. Mitchell I,

2012 WL 1512432, at *2-6. This Court's memorandum of decision of May 1, 2012, granted US Airways' motion to dismiss on counts two, three and four of the Complaint, and denied US Airways' motion for summary judgment on count one as to two plaintiffs. Id. at *21. The skycaps voluntarily withdrew count seven. Id. at *21 n.22.

There are two motions to dismiss counts five and six[1] presently before the Court: (1) US Airways' motion to dismiss on grounds of lack of standing, preemption under the Airline Deregulation Act, and statutory preemption of common law claims, Def. US Airways' Partial Mot. Dismiss Pls.' Fourth Am. Compl., ECF No. 141; Mem. Points Authorities Supp. US Airways' Partial Mot. Dismiss Fourth Am. Compl. ("Def.'s Mem."), ECF No. 142; and (2) US Airways' motion to dismiss on the ground of preemption under the Railway Labor Act, Def. US Airways' Partial Mot. Dismiss Pls.' Fourth Am. Compl., ECF No. 154; Mem. Points Authorities Supp. US Airways' Partial Mot. Dismiss Fourth Am. Compl., ECF No. 155. This Court heard oral argument on the

---

[1] All of the named plaintiffs remain in count five. See Pls.' Mot. Prelim. Approval Class Action Settlement Permission Send Notices Class Members 3 n.3 ("Mot. Prelim. Approval Settlement"), ECF No. 73. Only three plaintiffs remain in count six: Kevin Davis, Lee Hardin, and Steven McCoy, the skycaps employed by G2. Pursuant to a settlement in 2009 between Prime Flight and the skycaps employed by Prime Flight, the Prime Flight Skycaps may not bring any claims against US Airways that require US Airways to be considered their employer or joint employer. Mot. Prelim. Approval Settlement 2. The Prime Flight Skycaps therefore no longer assert count six of the Complaint.

3

motions on November 16, 2011, and took the matter under advisement.

**B.   Facts As Alleged**

The factual allegations of retaliation are relatively sparse.  The skycaps allege that two months after this putative class action was filed in April 2008, US Airways terminated the use of skycaps nationwide for curbside check-in services, replacing the skycaps with another class of employees.  Compl. ¶ 46; Pls.' Opp'n 7.  They allege that US Airways took such action for an improper reason: retaliation against the skycaps for filing this national lawsuit contesting the collection of curbside baggage fees.  Compl. ¶¶ 46-47.

**II. ANALYSIS**

**A.   Standard of Review**

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A mere recital of the legal elements supported only by conclusory statements is not sufficient to state a cause of action.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

**B.   Standing**

US Airways argues that the three skycaps employed by G2 (the "G2 Skycaps") do not have standing to assert counts five or six because the alleged retaliation occurred in June 2008, before the G2 Skycaps joined the putative class in September 2008.  Def.'s Mem. 14-15.  US Airways argues that it is therefore a temporal impossibility for US Airways to have terminated the G2 Skycaps' services for filing this lawsuit when they were not parties to the lawsuit at the time of the alleged retaliation.  Id. at 15.

To support this proposition, US Airways cites a handful of cases in which a plaintiff alleges retaliation for bringing a lawsuit, but the retaliation occurred before the plaintiff filed its claim.  Id.; see, e.g., Baker v. American Juice, Inc., 870 F. Supp. 878, 883 (N.D. Ind. 1994) (holding it was temporally impossible for the employer to have terminated the plaintiff for a retaliatory purpose where there was no evidence the plaintiff had made any complaints to his employer, the Equal Employment Opportunity Commission, or other governmental bodies until after his termination).

The cases cited by US Airways are distinguishable, as they all involve single plaintiffs who had not yet made their grievances known to their employers - whether in court or otherwise - at the time they were terminated.  In contrast, here, the retaliation claims were alleged by the skycaps employed by

Prime Flight (the "Prime Flight Skycaps") on behalf of a class: US Airways skycaps nationwide. Pls.' Opp'n 9-10. US Airways subsequently terminated the entire class of skycaps and replaced them with other employees to perform curbside baggage check-in services. Id. Unlike the cases cited by US Airways, it is not temporally impossible that US Airways terminated all skycaps nationwide in retribution for their putative class action lawsuit. US Airways cannot viably argue they were not aware of any grievances at the time of termination, as the employer did in Baker. Baker, 870 F. Supp. at 883.

US Airways further argues that the G2 Skycaps have not alleged an injury-in-fact under Article III. Def.'s Mem. 15 ("The G2 Plaintiffs cannot draw a connection between an act of US Airways and an injury under the statutes and common law invoked in counts five through seven."). To support its Article III argument, US Airways cites Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762 (1st Cir. 2011).

Plumbers' Union is wholly inapposite to the present case. In Plumbers' Union, the First Circuit upheld the dismissal of certain defendant trusts because none of the named plaintiffs had purchased mortgage-backed securities in those trusts, and therefore had not suffered an injury-in-fact by the trusts' alleged fraudulent actions. Id. at 771. It is difficult to see

how Plumbers' Union is instructive for this Court, where the present case involves members of a putative class who were terminated by the defendant after other lead plaintiffs brought a lawsuit on their behalf.

This Court holds that the G2 Skycaps have alleged both an injury-in-fact (their termination) and a causal connection (the filing of this lawsuit), see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992), and therefore have standing to assert counts five and six.

**C.  Preemption Under the Airline Deregulation Act**

US Airways argues that counts five and six ought be dismissed because they are preempted under the Airline Deregulation Act to the same extent as the counts dismissed in Mitchell I. Def.'s Mem. 11. The skycaps argue that employment termination claims are not preempted by the Airline Deregulation Act, as their relation to prices, routes, or services is too remote. Pls.' Opp'n 7.

Mitchell I sets forth the relevant legal framework to analyze whether the skycaps' retaliation claims are preempted. 2012 WL 1512432, at *10-18. The express preemptive language of the Airline Deregulation Act, 49 U.S.C. § 41713(b), read together with the saving clause, id. § 40120(c), preserves all common law or statutory claims not related to an airline's prices, routes, or services. 2012 WL 1512432, at *15. Therefore, the issue

confronting the Court is whether the skycaps' claims in counts five and six are "related to a price, route or service of an air carrier." 49 U.S.C. § 41713(b).

As it did in Mitchell I, the Court turns to the First Circuit's decision in DiFiore v. American Airlines, Inc., 646 F.3d 81 (1st Cir. 2011), for guidance. DiFiore signaled that certain conventional common law claims, including retaliation claims, may fall outside the preemptive reach of the Airline Deregulation Act. Id. at 87. The court referenced a set of circuit cases declining to preempt, inter alia, retaliation claims, and stated that "[t]hese circuit cases confirm our view that the Supreme Court would be unlikely . . . to free airlines from most conventional common law claims for tort, from prevailing wage laws, and ordinary taxes applicable to other businesses." Id. at 87 & n.7.

The court explained that the distinction between permissible and preempted claims turns on whether the claim "simply regulate[s] the employment relationship between the skycaps and the airline," - which claim would be permitted, even though it may indirectly affect fares and services - or, rather, whether it "has a direct connection to air carrier prices and services" - which claim would be preempted because "related to a price, route or service." Id. at 87.

This Court does not read DiFiore to create a categorical

exemption for retaliation claims; rather, the Court understands DiFiore to suggest a type of claim that could potentially survive the Airline Deregulation Act preemption analysis on an individualized basis given the appropriate factual circumstances. It can be inferred from the circuit cases regarding retaliation cited by the First Circuit[2] and the careful language employed by the court that such a claim would be narrow in scope and fit within the garden variety type of retaliation claims.

---

[2] DiFiore cites three circuit court cases, 646 F.3d at 87 n.7, all of which present conventional employment retaliation claims:
    In Gary v. Air Group, Inc., 397 F.3d 183 (3d Cir. 2005), a pilot for a small private aircraft brought a state law whistleblower claim when his employer terminated him after he expressed concerns about the qualifications of his co-pilot. Id. at 185. The court held that the pilot's claim was akin to a "garden variety employment claim" that was "simply too remote and too attenuated to fall within the scope of the [Airline Deregulation Act]." Id. at 1259-60.
    In Branche v. Airtran Airways, Inc., 342 F.3d 1248 (11th Cir. 2003), the Eleventh Circuit allowed a whistleblower claim to proceed where an aircraft inspector was terminated after reporting safety violations to the Federal Aviation Administration. Id. at 1251-52, 1260. The court categorized the inspector's allegation as "a simple employment discrimination claim," and held that it was not preempted because it did not relate to a service of an airline.
    In Anderson v. American Airlines, 2 F.3d 590, 597 (5th Cir. 1993), the Fifth Circuit held that an aircraft mechanic's statutory retaliation claim was not preempted by the Airline Deregulation Act where the mechanic was terminated by the airline after filing a workers' compensation claim. The court reserved the question of whether a reinstatement claim would be preempted, but summarily held that a damages claim alleging a violation of the state workers' compensation statute could proceed, as "[a]ny effect that such a claim may have on [the airline's] services is far too remote to trigger pre-emption." Id.

Herein lies the weakness in the skycaps' argument: the factual circumstances of this case do not present a conventional retaliation claim where, for example, a few skycaps were fired for raising a grievance against the airline.[3] In this case, taking the facts as alleged by the skycaps, US Airways systemically changed the manner in which it provided a service[4] (curbside baggage transportation) by replacing an entire class of employees (the skycaps) with a different class of employees (passenger service employees) to perform the service. Compl. ¶ 46; Pls.' Opp'n 7.

Thus, the facts of this case remove the wrongful termination and tortious interference claims from the class of conventional retaliation claims impliedly preserved in DiFiore. Extending the First Circuit's language in DiFiore to the present matter, the

---

[3] In their opposition brief, the skycaps cite cases from other circuits and argue that "[i]t is well settled that employment termination claims are not preempted by the ADA; their connection to airline prices, routes, or services is simply too remote." Pls.' Opp'n 7. First, as discussed above, it is unsettled in the First Circuit whether retaliation claims are outside the scope of Airline Deregulation Act preemption. Moreover, the cases cited by the skycaps to support this proposition involve conventional claims for the wrongful termination of individual employees, not an entire class of employees. Id. at 8 (citing Ventress v. Japan Airlines, 603 F.3d 676, 681 (9th Cir. 2010) (flight engineer); Gary, 397 F.3d 183, 189-90 (3d Cir. 2005) (pilot); Parise v. Delta Airlines, Inc., 141 F.3d 1463, 1466-67 (11th Cir. 1998) (customer service agent); Anderson, 2 F.3d 590, 597 (5th Cir. 1993) (aircraft mechanic)).

[4] DiFiore established that US Airways' provision of curbside baggage transportation constitutes a "service" within the meaning of the Airline Deregulation Act. 646 F.3d at 87.

retaliation claims "as applied here directly regulate[] how an airline service is performed . . . not merely how the airline behaves as an employer." 646 F.3d at 88.

To be clear, this Court is not holding that US Airways' motive in replacing the skycaps with a different class of employees was free from a punitive purpose. The Court expresses no opinion on the matter. Rather, this Court holds that the facts underlying the skycaps' claims preclude the Court from inquiring into US Airways' motives because DiFiore suggests that the wrongful termination and tortious interference claims have a direct connection to the manner in which US Airways provides its service of curbside baggage transportation.[5]

Because the Court holds counts five and six of the Complaint to be preempted under the Airline Deregulation Act, the Court need not address US Airways' remaining arguments based on preemption under the Railway Labor Act and statutory preemption of common law claims.

## III. CONCLUSION

For the foregoing reasons, US Airways' motion to dismiss counts five and six, ECF No. 141, is GRANTED. Count one shall

---

[5] The unfortunate downside of this holding is that, in theory, airlines could escape state law liability by ensuring that their unlawful actions affect enough employees to trigger preemption under the Airline Deregulation Act because those actions are "related to" the manner in which they provide a "service."

stand for trial as to the two plaintiffs eligible to maintain that claim. See Mitchell I, 2012 WL 1512432, at *21.

**SO ORDERED.**

                                              /s/ William G. Young
                                              WILLIAM G. YOUNG
                                              DISTRICT JUDGE